United States Court of Appeals,

Fifth Circuit.

Nos. 93-3873, 93-3877.

UNITED STATES of America, Plaintiff-Appellee,

v.

Sylvester TOLLIVER, et al., Defendants,

Noah Moore, Jr., Glenn Metz, and Shane Sterling, Defendants-Appellants.

June 11, 1997.

Appeals from the United States District Court for the Eastern District of Louisiana.

ON REMAND FROM THE UNITED STATES SUPREME COURT

Before LAY,[1] DUHÉ and DeMOSS, Circuit Judges.

DUHÉ, Circuit Judge:

Defendants were convicted of federal drug offenses arising from a narcotics conspiracy and gang war in New Orleans, Louisiana. Six of these eight Defendants, *viz.,* Gennero Arthur, Gerald Elwood, Marlo Helmstetter, Glenn Metz, Noah Moore, Jr., and Shane Sterling, were also convicted of violating 18 U.S.C. § 924(c)(1), which punishes any person who uses or carries a firearm during and in relation to any drug trafficking crime. In *United States v. Tolliver,* 61 F.3d 1189 (5th Cir.1995), we, *inter alia,* affirmed Defendants' firearms convictions. We revisit this case today on remand from the Supreme Court to determine whether Defendants' firearms convictions survive *Bailey v. United States,* --- U.S. ----, 116 S.Ct. 501, 133 L.Ed.2d 472 (1995). For reasons that follow,

---

[1]Circuit Judge of the Eighth Circuit, sitting by designation.

we affirm in part, vacate in part, and reverse and remand in part.

BACKGROUND

Arthur, Elwood, Helmstetter, Moore, and Sterling each occupied the positions of gunman, enforcer, and firearms procurer/storer in the Metz Organization. Metz led this drug organization. Their firearms convictions are based upon the following facts: (1) Arthur was convicted for possession of a loaded Mac 11 9 mm. pistol and a loaded Mini 14 .223 caliber assault rifle, both recovered from his vehicle after a police chase (count 13); (2) Metz was convicted for his vehicular possession of two loaded semi-automatic .380 pistols (count 14); (3) Helmstetter was convicted for possession of a 9 mm. semi-automatic pistol incident to his arrest (count 15); (4) Elwood was convicted for possession of two .38 caliber revolvers, three rifles, and a semi-automatic pistol, all recovered during two searches of his residence (counts 16 and 17); (5) Sterling was convicted for (a) possession of several loaded firearms, including two semi-automatic pistols and two assault rifles, several loaded high-capacity magazines, and extra ammunition—all recovered in the apartment he shared with Moore and all in proximity to drug paraphernalia, drug records, and receipts indicating Sterling's ownership of certain of the firearms, and (b) his act of reaching for a nearby loaded .40 caliber semi-automatic pistol when federal agents entered his room (count 22);[2] and (6) Moore was convicted for possession of several loaded firearms,

_____

[2]Sterling was indicted on three firearms counts (counts 20, 21, and 22) in the superseding indictment. Pursuant to an earlier ruling by this Court, however, counts 20 and 21 were dismissed.

including a loaded drum magazine capable of providing rapid firepower of ninety additional rounds, found in proximity to drug records and other drug paraphernalia in his apartment. (count 22). Drugs were not found on or near these Defendants contemporaneously with the seizure of these firearms.

In *Tolliver,* 61 F.3d at 1218, we affirmed Defendants' firearms convictions based upon these facts. The Supreme Court granted Sterling's and Moore's subsequent petitions for writ of certiorari, vacated the judgments on their § 924(c)(1) convictions, and remanded to this Court for further consideration in light of *Bailey.* Pursuant to *Bailey,* Metz moved this Court to recall the mandate in his case to allow his contest of his firearms conviction. Arthur, Elwood, and Helmstetter did not petition for certiorari, and this Court's mandate therefore issued as to them. They have neither requested recall of the mandate nor made any other request for relief.

DISCUSSION

I

Before reaching the merits, we must first consider Metz's motion to recall the mandate. Metz contends that our disposition of his firearms conviction directly conflicts with the Supreme Court's subsequent decision in *Bailey v. United States,* --- U.S. ---, 116 S.Ct. 501, 133 L.Ed.2d 472 (1995). We agree, as discussed in Part II below, and thus order the mandate recalled.

Our authority to recall our own mandate is clear. Under Rule 41.2 of the Fifth Circuit Rules, we may recall our mandate if necessary in order to prevent injustice. An example of such an

injustice is when a subsequent decision by the Supreme Court renders a previous appellate decision demonstrably wrong. *See, e.g., Greater Boston Television Corp. v. F.C.C.,* 463 F.2d 268, 278 n. 12 (D.C.Cir.1971). *Bailey* squarely fits this description. Recalling the mandate is also appropriate "where there is a danger of incongruent results in cases pending at the same time." *See American Iron & Steel Inst. v. Environmental Protection Agency,* 560 F.2d 589, 594 (3d Cir.1977); *see also Greater Boston,* 463 F.2d at 278-79. Failure to recall the mandate as to Metz would result in such incongruity. This Court's opinion in *Gradsky v. United States,* 376 F.2d 993, 995 (5th Cir.1967), which presents a procedural posture analogous to our own, is instructive. In *Gradsky,* this Court was faced with nine codefendants, five of whom petitioned the Supreme Court for writs of certiorari, were granted writs, and to whom the mandate was stayed, and four of whom failed to seek further review and as to whom mandate issued.[3] "[T]o prevent injustice, this Court, on motion to recall by three of the four non-peitioning defendants, recalled its mandate to allow them to join in the proceedings after their co-defendants obtained a remand. *Id*. Guided by these authorities, we are convinced that recalling the mandate as to Metz is appropriate and in the interest

---

[3]One of these four defendants either petitioned the Supreme Court nor moved this Court to recall its mandate. As to her, this Court declined to recall its mandate, noting that the her failure to appear properly before the court was evidence of her lack of "interest in participating in th[e] proceeding." *Gradsky,* 376 F.2d at 995 n. 1. Accordingly, this Court did not grant her any relief.

of justice, do so today.[4]

## II

Section 924(c)(1) penalizes "[w]hoever, during and in relation to any ... drug trafficking crime ... uses or carries a firearm."  In *Bailey,* the Supreme Court addressed only the "use" prong of this text, leaving the remainder of the section untouched. As to "use," *Bailey* held that § 924(c)(1) requires evidence "sufficient to show an *active employment of the firearm by the defendant,* a use that makes the firearm an operative factor in relation to the predicate offense."  *Id.* at ----, 116 S.Ct. at 505 (emphasis added).  A defendant is culpable under § 924(c)(1), the

---

[4]We are equally convinced that we should not recall *sua sponte* our mandate as to Arthur, Elwood, and Helmstetter.  These three neither petitioned the Supreme Court for writs of certiorari nor moved this Court to recall its mandate.  As was true of the non-petitioning, non-moving defendant in *Gradsky,* 376 F.2d at 995 n. 1, *see supra* note 3, these Defendants "ha[ve] shown no interest in participating in this proceeding" and are thus not properly before us.  We are therefore unable to address their firearms convictions.  As a court of error, we have jurisdiction over only those parties who seek relief.  *See United States v. Johnson,* 718 F.2d 1317, 1325 n. 23 (5th Cir.1983) (*en banc* ), *cited in United States v. Coscarelli,* 105 F.3d 984, 995 (5th Cir.1997) (Jones, J., dissenting).

   This does not suggest that this Court lacks authority to act *sua sponte* on all matters.  Where a party evinces interest in judicial review, this Court has authority to act.  *See, e.g.,* Reeves v. *International Tel. & Tel. Corp.,* 705 F.2d 750, 752-53 (5th Cir.1983) (per curiam) (acting *sua sponte* to modify original mandate where interest was omitted in final judgment and motion to recall mandate was not filed because party "did promptly seek a judicial determination of the interest question" albeit in district court);  *cf. Leroy v. City of Houston,* 906 F.2d 1068, 1075 (5th Cir.1990) (noting that it treats appellate request for prejudgment interest as authority "to *sua sponte* recall our earlier mandate where we deemed that required in the interests of justice," but declining to do so where, as here, plaintiffs, who were experienced attorneys representing themselves, "adamantly refused to file a motion to recall the mandate").

Court emphasized, "only [in] cases of actual use, not intended use, as when an offender places a firearm with the intent to use it later if necessary." *Id.* at ----, 116 S.Ct. at 507 Examples of "use" include "brandishing, displaying, bartering, striking with, and most obviously, firing, or attempting to fire, a firearm." *Id.* at ----, 116 S.Ct. at 508.

*Bailey* 's "active employment" requirement clearly overrules our pre-*Bailey* precedent upon which we had relied to affirm Defendants' firearms convictions. This precedent held that to convict under § 924(c)(1), the Government need show only that the defendants possessed the firearms in question. *See United States v. Blake,* 941 F.2d 334, 342 (5th Cir.1991) (holding that evidence demonstrating " "that the weapon involved could have been used to protect, facilitate, or have the potential of facilitating the operation, and [that] the presence of the weapon was in some way connected with the drug trafficking' " is sufficient to sustain a § 924(c)(1) conviction), *quoted in Tolliver,* 61 F.3d at 1218. In contrast, *Bailey* emphasizes that the mere possession of firearms for the protection of or to embolden an offender is not enough to constitute "use" under § 924(c)(1). *See Bailey,* --- U.S. at ----, 116 S.Ct. at 508 (emphasizing that the inert presence of a firearm, without more, cannot trigger § 924(c)(1) culpability).

We turn now to examine whether Defendants' firearms convictions survive *Bailey.*

### A

Sterling concedes that his act of reaching for his pistol in self-protection when federal agents stormed into his bedroom

constitutes a "use" of the gun within the post-*Bailey* meaning of §
924(c)(1).  Sterling insists, however, that such action does not
constitute use "in relation to" a drug trafficking crime.[5]  We are
not persuaded.

Whether Sterling's use of the loaded pistol during the raid
was "in relation to" the underlying drug conspiracy is a mixed
question of law and fact.  We defer to the jury's factual findings
on this issue unless clearly erroneous.  The ultimate determination
of whether § 924(c)(1) is satisfied, however, is a question of law
for this Court to decide.  *See United States v. Muniz-Melchor,* 894
F.2d 1430, 1439 n. 9 (5th Cir.1990) (determining standard of review
for mixed question whether probable cause for warrantless search
existed).

*Bailey* did not address the "in relation to" prong of §
924(c)(1).  The pre-*Bailey* interpretation of the "in relation to"
language therefore remains unaffected.  *See United States v.
Richardson,* 86 F.3d 1537, 1548 n. 5 (10th Cir.) (noting that the
"question of whether a weapon was used ... "during and in relation
to' a drug trafficking offense" is distinct from the pre-*Bailey*
"use" requirement that the firearm be an integral part of the
criminal undertaking), *cert. denied,* --- U.S. ----, 117 S.Ct. 588,
136 L.Ed.2d 517 (1996);  *see also United States v. David,* No.
96-1391, 1997 WL 26581, at *3 (10th Cir.1997) (unpublished)

---

[5]Sterling does not contest that his "use" of the firearms
occurred "during" the predicate drug offense, here, drug
conspiracy.  Nor could he, as the Government points out, because
Sterling's "use" of the loaded pistol occurred during the period
for which the conspiracy was charged, and found, to have existed.
*See Tolliver,* 61 F.3d at 1218.

(stating "*Bailey* did not affect the clearly established "in relation to' element of § 924(c)(1)"), *petition for cert. denied,* --- U.S. ----, --- S.Ct. ----, --- L.Ed.2d ----, 65 USLW 3767 (U.S. April 18, 1997). In *Smith v. United States,* 508 U.S. 223, 237-38, 113 S.Ct. 2050, 2058-59, 124 L.Ed.2d 138 (1993), the Supreme Court interpreted the phrase "in relation to," stating:

> The phrase "in relation to" is expansive, ... as the Courts of Appeals construing § 924(c)(1) have recognized. According to Webster's, "in relation to" means "with reference to" or "as regards." The phrase "in relation to" thus, at a minimum, clarifies that the firearm must have some purpose or effect with respect to the drug trafficking crime; its presence or involvement cannot be the result of accident or coincidence. As one court has observed, the "in relation to" language "allay[s] explicitly the concern that a person could be" punished under § 924(c)(1) for committing a drug trafficking offense "while in possession of a firearm" even though the firearm's presence is coincidental or entirely "unrelated" to the crime. Instead, the gun at least must "facilitat[e], or ha[ve] the potential of facilitating," the drug trafficking offense.

(citations omitted) (declining to determine precise contours of "in relation to" requirement). The phrase "in relation to" therefore requires only that the firearm have played a role in the crime for which the defendant is charged; the firearm cannot have been inadvertently used or carried "in relation to" an obviously unrelated crime. *See United States v. Ocampo,* 890 F.2d 1363, 1371 (7th Cir.1989) (citation omitted); *United States v. Stewart,* 779 F.2d 538, 540 (9th Cir.1985), *overruled on other grounds,* 80 F.3d 1253 (9th Cir.1996).

Sterling maintains that his gun use on the night of the raid does not satisfy *Smith,* insisting that the firearm had no purpose or effect with respect to the underlying drug conspiracy. Sterling characterizes his act of reaching for the gun as one of "misguided

self-defense," not one "in relation to" a drug conspiracy, explaining that his instinct for self-protection compelled him to reach for his gun when he was awakened in the middle of the night by men in dark clothing. He concludes that the firearm's presence as to the drug conspiracy was therefore entirely coincidental. The only crime, if any, to which his use of the firearm could relate, Sterling contends, is assault of a federal officer—an offense, he points out, with which he is not charged.

Sterling, however, presented his "sleepy act of self-defense" defense to the jury. The jury rejected it, and this finding is not clear error. We agree with the Government that Sterling's use of the pistol was "in relation to" the underlying drug conspiracy. As noted above, the Supreme Court has explained that the phrase is expansive and requires only that the firearm "have some purpose ... with respect to the drug trafficking crime; its presence or involvement cannot be the result of accident or coincidence." *Smith,* 508 U.S. at 237-38, 113 S.Ct. at 2059. To satisfy the statute, therefore, the firearm need only facilitate or have the potential of facilitating the underlying drug trafficking offense. Sterling's conduct satisfies this standard. A jury could have found that Sterling's use of the pistol was not accidental and that the gun had the potential to facilitate the drug distribution conspiracy of which Sterling is charged. Indeed, present in Sterling's apartment at the time of the raid were drug records, a cache of assault weapons, and a co-conspirator, Defendant Moore, with whom Sterling shared the apartment. Accepting the jury's factual findings, we conclude that Sterling's use of the gun was

"in relation to" the underlying drug conspiracy; such use could have facilitated that conspiracy by preventing the arrest of two conspirators and forestalling the seizure of various instrumentalities of the conspiracy.[6] We therefore affirm Sterling's § 924(c)(1) conviction.

                                    B

As to Metz, we invoke the concurrent sentence doctrine to decline review of his firearms conviction. To avoid any possible adverse collateral consequences our decision may have, we vacate

---

[6]Sterling argues that the lack of drugs in his apartment at the time of the raid is fatal to this position. We disagree. In *United States v. Riascos-Suarez,* 73 F.3d 616, 624 (6th Cir.), *cert. denied,* --- U.S. ----, 117 S.Ct. 136, 136 L.Ed.2d 84 (1996), a post-*Bailey* case, the court approvingly cited a pre-*Bailey* case, *United States v. Edwards,* 994 F.2d 417 (8th Cir.1993), for the proposition that the "in relation to" element of § 924(c)(1) does not require the presence of drugs in the proximity of firearms for a valid gun conviction. In *Edwards,* the defendant was convicted of conspiracy to distribute cocaine and of using a firearm during and in relation to that conspiracy in violation of § 924(c)(1) even though drugs were not found in the vicinity of the firearms. In response to the defendant's challenge to the validity of his gun conviction, the court replied that the "[p]rotection of drug proceeds furthers a drug trafficking crime, and use of a firearm to guard such proceeds therefore violates § 924(c)." *Edwards,* 994 F.2d at 421.

A post-*Bailey* case supports the same theory. In *United States v. DeSantiago-Flores,* 107 F.3d 1472, 1476 (10th Cir.1997), the court found § 924(c)(1) satisfied even in the absence of drugs. In *DeSantiago-Flores,* in exchange for forgiveness of a drug debt, the defendant had one of his customers bomb the home of another customer who was delinquent with her payment. The defendant was convicted under an aiding and abetting theory with violation of § 924(c)(1) for using an incendiary bomb during and in relation to a drug trafficking crime. The defendant challenged his conviction, arguing that the evidence supported nothing more than an independent personal vendetta. The court rejected this argument, concluding that the defendant's attempt to intimidate his delinquent customer had the potential of facilitating the underlying drug conspiracy.

his firearms conviction and order that the fifty dollars special assessment he was assessed on his firearms conviction be returned, if such assessment has in fact been paid. This Court has vacated unreviewed convictions in similar situations in the past. *See United States v. Montemayor,* 703 F.2d 109, 116 (5th Cir.1983). As we observed in that case, vacating an unreviewed conviction in no way alters the jury's verdict or the conviction itself. "The effect of this judicial action is to suspend imposition of the sentences. No need of the Government is impaired; at the same time, no possibility of adverse collateral consequences to defendants exists." *Id.* (footnote omitted) (citing *United States v. Cardona,* 650 F.2d 54, 58 (5th Cir.1981)).[7]

### C

Moore was charged and convicted under both the "use" and "carry" prongs of § 924(c)(1). We therefore have occasion to determine whether either prong may support his conviction.

The facts underlying Moore's conviction do not show that Moore actively employed firearms, as required by *Bailey,* --- U.S. at ----, 116 S.Ct. at 507. Accordingly, we hold that Moore cannot be convicted under the "use" prong of § 924(c)(1).

Nor can Moore be convicted under the "carry" prong. As noted above, *Bailey* did not address the "carry" prong of § 924(c)(1). Prior precedent analyzing this language is therefore " "not

---

[7]We note that Metz has been sentenced to life on other counts; vacation of his firearms conviction would therefore make no difference in the amount of time that he serves. We decline to invoke the concurrent sentence doctrine as to Moore, however, because our disposition of his firearms conviction would affect the amount of time he would have to serve.

affected.' " *United States v. Rivas,* 85 F.3d 193, 195 (5th Cir.) (citation omitted), *cert. denied,* --- U.S. ----, 117 S.Ct. 593, 136 L.Ed.2d 521 (1996). Our "carry" jurisprudence holds that where, as here, firearms are recovered outside of a vehicle context, " "carrying' requires a showing that the gun was in reach during the commission of the drug offense." *United States v. Pineda-Ortuno,* 952 F.2d 98, 103 (5th Cir.1992); *see also United States v. Blankenship,* 923 F.2d 1110, 1116 (5th Cir.1991); *accord United States v. Joseph,* 892 F.2d 118, 126 (D.C.Cir.1989) (holding that "carrying" requires proof that defendant "has a present ability to exercise dominion and control over a firearm" and "has the firearm within easy reach and available to protect him during his ongoing [drug trafficking] offense" (internal quotation marks omitted)).

There is no evidence to suggest that Moore "carried" firearms within this meaning. Rather, the record reveals only that authorities found the firearms underlying Moore's gun conviction scattered throughout Moore's home; the Government points to no evidence indicating the firearms were within Moore's reach during the commission of the predicate drug offense. That Moore merely possessed the firearms is insufficient to support a conviction under the "carry" prong. *See United States v. Smith,* 80 F.3d 215, 221 (7th Cir.1996) (concluding that defendant must do more than possess or store weapon to be convicted of carrying firearm during and in relation to drug offense); *United States v. Morris,* 929 F.Supp. 993, 998 n. 2 (S.D.Miss.1996) (stating that "defendant cannot be said to have carried guns that were not even in the same room with the defendant and which were locked away in a closet.").

We therefore reverse Moore's firearms conviction and remand for resentencing.

## CONCLUSION

For the foregoing reasons, we grant Metz's motion to recall the mandate, and the judgment of the district court is AFFIRMED IN PART, VACATED IN PART, and REVERSED AND REMANDED IN PART.