USCA1 Opinion

 

 United States Court of Appeals
 For the First Circuit
 ____________________

No. 97-2234

 UNITED STATES,

 Appellee,

 v.

 GEORGE CURRIER, JR., A/K/A GIO,

 Defendant, Appellant.

 ____________________

 APPEAL FROM THE UNITED STATES DISTRICT COURT

 FOR THE DISTRICT OF MASSACHUSETTS

 [Hon. William G. Young, U.S. District Judge]

 ____________________

 Before

 Torruella, Chief Judge,

 Selya and Lynch, Circuit Judges.

 _____________________

 Joseph J. Balliro, Sr., with whom Balliro & Mondano and
Victoria L. Nadel were on brief, for appellant.
 Kevin J. Cloherty, Assistant United States Attorney, with whom
Donald K. Stern, United States Attorney, and Geoffrey E. Hobart,
Assistant United States Attorney, were on brief, for appellee.

 ____________________

 August 13, 1998
 ____________________ TORRUELLA, Chief Judge. George Currier was arrested in
connection with a large undercover investigation and sting
operation of cocaine and methamphetamine sales involving the Boston
area Hell's Angels Motorcycle Club. He was eventually indicted and
convicted of numerous drug trafficking crimes. Currier appeals
only one of those counts. The count at issue is Count Twenty,
carrying and using a firearm during and in relation to a drug
trafficking crime in violation of 18 U.S.C. 924(c)(1). Unlike
the other charges, this Count did not arise out of the undercover
investigation, but specifically out of an incident during the
execution of Currier's arrest warrant in which he drew his gun on
an arresting officer. The narrow issue on appeal is whether
Currier's use of his revolver was "in relation to" his drug
trafficking offenses. We agree with the district court that it
was, and therefore affirm.
 BACKGROUND
 On September 5, 1996, the DEA concluded an investigation
into various drug trafficking activities of members of the Salem,
Massachusetts Chapter of the Hell's Angels Motorcycle Club with the
arrest of sixteen people and the execution of ten search warrants. 
Currier, who is not a member of the Hell's Angels, was arrested on
that day for his role in arranging cocaine and methamphetamine
sales with the motorcycle club. The 924(c) charge at issue in
this case is based on events that took place during Currier's
arrest in the early morning hours of September 5, 1996.
 As the members of the Currier arrest team approached the
basement door of Currier's apartment, they loudly announced, "State
Police, DEA, Police" and knocked on the door. When no one
responded, a Revere, Massachusetts police officer assigned to the
arrest and search team used a battering ram to make a forcible
entry into the apartment. On his first attempt to break in the
door, the officer accidentally missed the wooden frame of the door
and broke the door window. On his second attempt, the door lock
gave way and the door opened. As the door opened and entry was
made, the members of the arrest team continued yelling, "State
Police, DEA, Police!"
 When Sergeant Martin Conley of the Massachusetts State
Police, a member of the arrest and search team, stepped into the
apartment he noticed a closed door just behind the open front door
to the apartment. Sgt. Conley tried to kick open the closed door. 
Although the door initially opened, the door met with resistance
and shut. Sgt. Conley kicked the door a second time and it opened.
 When the door opened, Sgt. Conley was staring down the
barrel of the suspect's silver revolver. Currier, who was not
clothed at the time, was standing about four feet from the entrance
to the door in a "shooter's stance," with the gun pointed directly
at the officer. Sgt. Conley, who also had his gun drawn, ordered
Currier to drop his weapon. Currier remained in a shooter's
stance. Sgt. Conley again ordered Currier to drop his weapon. 
This time, Currier took a step back and dropped his weapon. He was
then placed under arrest.
 During the search of Currier's apartment, Sgt. Conley
discovered approximately ten ounces of methamphetamine hidden in
the drop ceiling of the bedroom, close to where Currier was
standing when he confronted Sgt. Conley. Officers also found piles
of money in elastic bands on Currier's bed. A total of $4,225 was
recovered from Currier's bedroom, as well as a triple beam scale. 
The arresting officers took custody of Currier's weapon, a Smith &
Wesson .357 magnum, six-shot revolver loaded with hollow-point
ammunition.
 Currier elected a bench trial on the count at issue. At
the conclusion of the evidence and after hearing argument from the
parties, the district court found Currier guilty of violating 18
U.S.C. 924(c). After announcing the guilty verdict, the district
court explained its verdict as follows:
 [T]he court finds beyond a reasonable
 doubt that you were at all material times
 relevant to Count 20 engaged in a drug
 trafficking offense, that is, the
 possession of methamphetamine with the
 intent to distribute it. The court
 likewise finds beyond a reasonable doubt
 that your conduct in grabbing the weapon
 and pointing it at the police officer
 constitutes a use of the weapon. 

 The question, the closest question, is
 whether your use of the weapon was "in
 relation to" the drug trafficking offense. 
 I do not see, despite Mr. Balliro's able
 argument, that Bailey intended to retreat
 from the language in Smith v. United
 States that the gun must at least
 facilitate or have the potential of
 facilitating the drug trafficking offense. 
 The way I interpret it is -- and I believe
 beyond a reasonable doubt, that you had
 that weapon there to facilitate drug
 trafficking. 

 But I recognize that Bailey requires more. 
 That if you had not reached for the
 weapon, you could not be convicted of this
 offense. Here, you reached for the weapon
 which you had there to facilitate the drug
 trafficking offense, and consistent with
 the reasoning in United States v.
 Tolliver, which is virtually on all fours
 with this case, I think that a guilty
 finding is . . . warranted.

 In fairness to you, however, let me say
 that I have a reasonable doubt concerning
 whether when you snatched that weapon up
 and pointed it at a police officer, you
 had any thought at all at that instant
 about drugs or about drug proceeds. I do
 not think that, at that time in the, in
 that frenetic moment, the government has
 proved beyond a reasonable doubt that one
 of your purposes was to get the drugs or
 the drug paraphernalia or the proceeds out
 of that apartment with you. The most that
 I think is proved is that, beyond a
 reasonable doubt, is that you snatched up
 that weapon to get yourself out of there.

 The narrow issue on appeal is whether, in light of these
findings, the district court properly found that Currier's use of
his revolver was "in relation to" his underlying trafficking
offenses.
 ANALYSIS
 Section 924(c)(1) of Title 18 imposes a five-year,
consecutive term of imprisonment upon any person who "during and in
relation to any crime of violence or drug trafficking crime . . .
uses or carries a firearm." There are essentially three elements
to a 924(c) offense: (1) that the defendant committed the
predicate drug trafficking crime or crime of violence; (2) that the
defendant knowingly carried or used a firearm; and (3) that the
defendant did so during and in relation to the specified predicate
offense. See United States v. Manning, 79 F.3d 212, 216 (1st Cir.
1996). Currier does not deny that he committed the predicate drug
trafficking crime or that his brandishing of his revolver on the
morning of September 5, 1996, constitutes a "use" under 18 U.S.C.
 924 (c)(1). Cf. Bailey v. United States, 516 U.S. 137, 148
(1995) (weapon must be brandished, displayed, bartered, or fired in
order to constitute "use"). He only disputes that the requisite
nexus existed, i.e., that his gun was used "during and in relation
to" his drug trafficking offenses.
 Currier acknowledges that grabbing a gun in hopes of
postponing or escaping an imminent arrest for an underlying drug
trafficking crime violates 924(c)(1). See, e.g., United Statesv. Johnson, 87 F.3d 133, 138 (5th Cir. 1996) (per curiam). He
argues, however, that he was only using his gun in self-defense,
and that he dropped the gun as soon as he recognized that the
police were involved. If, indeed, Currier was using his gun only
for self-defense, and had formed no intent to evade or escape
arrest, or to facilitate his drug trafficking in any other way,
then his conviction under 924(c)(1) might well be improper. "The
phrase 'in relation to' . . . at a minimum, clarifies that the
firearm must have some purpose or effect with respect to the drug
trafficking crime; its presence or involvement cannot be the result
of accident or coincidence." Smith v. United States, 508 U.S. 223,
237-38 (1993).
 Currier maintains that the district court's factual
findings recited above, which he does not find erroneous, support
his self-defense claim. The question presented in this case, then,
is whether those district court findings support Currier's self-
defense argument, or, at the very least, are ambiguous. We
conclude that, while the findings do not explicitly reject
Currier's version of the facts, they do so unambiguously.
 The first indication that the district court rejected
Currier's self-defense argument is the statement that, "consistent
with the reasoning in United States v. Tolliver, which is virtually
on all fours with this case, I think that a guilty finding is . . .
warranted." In United States v. Tolliver, 116 F.3d 120 (5th Cir.),
cert. denied, 118 S. Ct. 324 (1997) one of the appellants, Shane
Sterling, reached for his pistol when federal agents stormed into
his bedroom to arrest him. See id. at 124. Also in Sterling's
apartment at the time of the raid were drug records and a cache of
weapons. See id. at 126. Sterling maintained that his act of
reaching for his gun was one of "misguided self-defense," not one
"in relation to" a drug trafficking offense. In affirming
Sterling's 924(c) conviction, the Fifth Circuit noted that the
jury rejected Sterling's self-defense theory, and concluded that
his attempt to reach his gun could have facilitated the conspiracy
by preventing the arrest of a co-conspirator and "forestalling the
seizure of various instrumentalities of the conspiracy." Id. at
125-26. We can only conclude that the district court found
Tolliver to be "virtually on all fours with this case" because he
rejected Currier's self-defense theory and determined that his
snatching of his gun could have facilitated the underlying drug
trafficking crimes. The district court judge would not have found
Tolliver directly applicable to the present case if he had accepted
Currier's self-defense argument.
 The second indication that the district court judge
rejected Currier's self-defense argument is his statement that "the
most that I think is proved is that, beyond a reasonable doubt, is
that you snatched up that weapon to get yourself out of there." If
the judge had accepted Currier's version of the facts, he might
have said, "you snatched up that weapon to defend yourself," or,
"to protect yourself," or even, "because you were afraid for your
safety." Instead, he used the language of escape when he said "get
yourself out of there." This statement is clearly at odds with
Currier's version of the facts.
 Yet another clue to the district court's implicit
findings can be gathered from what was not said during the
announcements following the delivery of the verdict. At no time
did the district court mention self-defense, or anything related to
self-defense. If the district court judge had been moved to accept
Currier's argument, he would likely have so indicated in some
manner. Instead, he reasonably assumed that he had made his
rejection of that argument clear through his Tolliver analysis, his
"get yourself out of there" comment, and, ultimately, his decision
to convict Currier on the 924(c)(1) charge. There is nothing to
prevent this court from making the obvious inference in this case. 
The district court concluded that Currier grabbed the gun with the
intention of escaping or forestalling his arrest, and, however
short-lived that notion, his conviction under 18 U.S.C. 924(c)(1)
was proper.
 CONCLUSION
 For the reasons stated herein, we affirm the judgment of
the district court.