Revised September 15, 1998

**UNITED STATES COURT OF APPEALS**
**For the Fifth Circuit**

No. 96-41086

UNITED STATES OF AMERICA,

Plaintiff - Appellee,

VERSUS

ROBERT W. SCHMALZRIED,

Defendant - Appellant.

Appeal from the United States District Court
for the Eastern District of Texas

August 20, 1998

Before DAVIS, E. GARZA and BENAVIDES, Circuit Judges.

PER CURIAM:

Appellant Robert W. Schmalzried ("Schmalzried") appears before this court a second time[1] and appeals the district court's denial of his 28 U.S.C. §2255 motion to vacate his judgment of conviction pursuant to 18 U.S.C. § 924(c)(1) (Supp. 1998), due to the Supreme

---

[1] In a direct appeal, Schmalzried contended that there was insufficient evidence to support a conviction under 18 U.S.C. § 924(c)(1). We affirmed his conviction in an unpublished opinion. United States v. Schmalzried, 947 F.2d 1487 (5th Cir. 1991).

Court's clarification of what constitutes "use" of a firearm in Bailey v. United States, 516 U.S. 137, 116 S. Ct. 501 (1995). The Appellant contends that post-Bailey, his conviction cannot rest on the "use" prong of §924(c)(1), and that the evidence does not support his conviction under the "carry" prong. The district court denied Appellant's request for habeas relief, concluding that while his conviction under the "use" prong of §924(c)(1) was invalid, the conviction could stand under the "carry" prong. The Appellant now appeals the district court's denial of his habeas petition and requests that this Court vacate his judgment of conviction under §924(c)(1). For the reasons that follow, we reverse the district court's denial of habeas relief, vacate Schmalzried's conviction under §924(c)(1), and remand for entry of a new plea.

I.

Following the execution of a search warrant at a residence in Tyler, Texas, Robert W. Schmalzried, a.k.a. "Beeper Bob" ("Schmalzried") and several codefendants, including his wife, Kelly Ann Schmalzried, were arrested. When the agents entered the residence, Schmalzried and two codefendants were cooking methamphetamine ("meth") in the kitchen. The agents found a loaded .25 caliber Model 9 Walther semi-automatic pistol in Kelly Ann Schmalzried's purse, which was placed on the coffee table in the living room. No one was in the living room when the agents entered the residence. Schmalzried admitted that he had given the

2

gun to his wife for her personal protection,[2] but stated that he was unaware of the purse's location at the time of his arrest. A codefendant, arrested at a motel some distance away, claimed that the group had used guns to protect themselves and their drugs. Kelly Ann Schmalzried stated that earlier in the day she had seen her husband place the gun and two syringes in her purse.

Schmalzried entered into a plea agreement with the Government, in which he pled guilty to possession of a listed chemical with intent to manufacture a controlled substance, in violation of 21 U.S.C. §841(d)(2) (1976 & Supp. 1998), and to using or carrying a firearm during and in relation to any drug trafficking crime, in violation of 18 U.S.C. §924(c)(1) (Supp. 1998). The district court imposed consecutive sentences of ten years and five years for the respective violations. Following the Supreme Court's issuance of Bailey, Schmalzried filed a §2255 motion to vacate his conviction under 18 U.S.C. §924(c)(1). The district court denied his habeas petition, and Schmalzried now appeals that decision to this Court.

II.

We review a district court's denial of a § 2255 motion under two standards. Because "acceptance of a guilty plea is considered a factual finding that there is an adequate basis for the plea," the standard of review of this acceptance is clear error. United States v. Rivas, 85 F.3d 193, 194 (5th Cir.), cert. denied, 117 S.

---

[2] She had been raped when she was twelve years old.

3

Ct. 593 (1996). We review the court's conclusions of law <u>de</u> <u>novo</u>. <u>United States v. Faubion</u>, 19 F.3d 226, 228 (5th Cir. 1994).

                                III.

The district court concluded that Schmalzried's conviction cannot stand on the "use" prong of §924(c)(1) after <u>Bailey</u>.[3] The Government does not challenge this part of the district court's opinion. The district court upheld his conviction under the "carry" prong of §924(c)(1),[4] however, and it is the validity of this conclusion that is the subject of this appeal.

<u>Bailey</u> did not address the "carry" prong of §924(c)(1), and therefore has no effect on this Circuit's precedents regarding "carry" convictions.[5] In a nonvehicular context, our cases require that the weapon be moved or transported in some manner, or borne on

---

[3] After <u>Bailey</u>, a person cannot be convicted of "use" under 18 U.S.C. § 924(c)(1) for merely possessing the firearm; the person must actively employ the firearm. <u>Bailey</u>, 516 U.S. at 144, 116 S.Ct. 501 at 506. The <u>Bailey</u> Court stated that the following actions constitute "active employment": "brandishing, displaying, bartering, striking with and ... firing or attempting to fire, a firearm." <u>Id.</u> at 148, 116 S.Ct. 501 at 508. Because the firearm supporting Schmalzried's § 924(c)(1) offense was enclosed in a purse and located in an adjacent room of the house, there was no evidence of the kind of "use" contemplated in <u>Bailey</u>.

[4] Where a conviction fails under the "use" prong of § 924(c)(1) after <u>Bailey</u>, it may stand if the "carry" prong is satisfied. <u>See, e.g.</u>, <u>Bailey</u>, 516 U.S. at 151, 116 S.Ct. 501 at 509 (remanding for consideration whether the convictions which fail under the "use" prong may survive under the "carry" prong).

[5] <u>Rivas</u>, 85 F.3d at 195; <u>United States v. Tolliver</u>, 116 F.3d 120, 126-27 (5th Cir.), <u>cert. denied</u>, 118 S. Ct. 324 (1997); <u>United States v. Muscarello</u>, 106 F.3d 636, 638 (5th Cir. 1997), <u>aff'd</u>, Nos. 96-1654 & 96-8837, 1998 WL 292058 (Apr. 18, 1997).

4

one's person, during and in relation to the commission of the drug offense.[6]  The Supreme Court has held that "during and in relation to any drug trafficking crime" means that "the firearm must have some purpose or effect with respect to the drug trafficking crime; its presence or involvement cannot be the result of accident or coincidence."  Smith v. United States, 508 U.S. 223, 238 (1993).

The gun was "carried" when Schmalzried moved it to Kelly Ann Schmalzried's purse earlier during the day on which the police raided the meth lab.  As a result, we examine the evidence to determine whether the carry occurred "during and in relation to" a drug offense.

The dissent reads Smith to interpret "during and in relation to" to mean that the *firearm* must have some purpose or effect with respect to the drug crime, but that no such nexus is required between "carrying" the firearm and the drug offense.  We disagree.  Nothing in Smith requires us to ignore the plain language of the statute.  Smith explains the "during and in relation to" clause in the context of "using" a firearm.  The Court explained that an attempt to trade a gun for drugs is a "use," and then explained that to be used during and in relation to a drug offense, "the firearm must have some purpose or effect with respect to the drug trafficking crime." 508 U.S. 223 at 238, 113 S.Ct. 2050 at 2058.

---

[6]  See, e.g., United States v. Thompson, 122 F.3d 304, 307 (5th Cir. 1997).

5

Other courts read <u>Smith</u> the same way.  A New York district court held that under <u>Smith</u>, "during and in relation to a drug trafficking offense means that the carrying of the weapon somehow furthered or facilitated the underlying offense."  <u>Triestman v. Keller</u>, No. 97-CV-1460, 1998 WL 52026, at *3 (N.D.N.Y. Feb. 2, 1998).  The court held:  "In order for the carrying of a firearm to be considered during and in relation to a conspiracy, however, there must be 'a nexus between the carriage of the gun and the underlying crime of conspiracy.'"  <u>Id.</u>

Other courts also require the government to require a nexus between use or carriage and the underlying offense.  <u>See, e.g.</u>, <u>United States v. Lampley</u>, 127 F.3d 1231, 1241 (10th Cir. 1997), <u>cert. denied</u>,  118 S. Ct. 1098 (1998), <u>cert. denied</u>, 118 S. Ct. 1099  (1998),  and  <u>cert. denied</u>, 118 S. Ct. 1201 (1998) ("Essentially, we must determine whether the evidence in the record is sufficient, as to both Mr. Lampley and Mr. Baird, to establish a nexus between the carriage of the gun and the underlying crime of conspiracy."); <u>In re Hanserd</u>, 123 F.3d 922, 927 (6th Cir. 1997) (The court declined to uphold the §924(c)(1) conviction where "[t]here was no evidence that Hanserd was engaged in any substantive drug crime while he carried the guns" and where the evidence "in no way indicates a nexus between those crimes and carrying the guns."); <u>United States v. Pomranz</u>, 43 F.3d 156, 160 (5th Cir. 1995) ("Thus, only the act of carrying a weapon 'during and in relation to . . . [a] . . . drug trafficking crime' is a

6

substantive offense under §924(c)(1).").

We therefore hold that under Smith, the government was obliged to demonstrate that by its carriage (to Kelly Ann Schmalzried's purse), the firearm had a "purpose or effect" with respect to the drug offense (possession of a controlled chemical). The record is silent on a number of facts and that silence prevents us from drawing an inference that, by its carriage, the firearm had such a purpose or effect. We do not know where the purse was located when Schmalzried placed the gun in it or whether Schmalzried "carried" the pistol into the house. Schmalzried moved the gun within the house before he placed it in his wife's purse, but we do not know the location of the gun immediately before he placed it in her purse or where the purse was located when he placed the gun in it.

Because the record's silence renders a critical element of a "carry" offense under §924(c)(1) unsatisfied, and the conviction cannot survive under the "use" prong after Bailey, we conclude that Schmalzried's plea of guilty with regard to this count must be vacated. We therefore reverse the district court's denial of habeas relief, vacate the plea of guilty under §924(c)(1), and remand this case to the district court for entry of a new plea.

REVERSED, VACATED and REMANDED.

7

EMILIO M. GARZA, Circuit Judge, dissenting:

The question presented by this § 2255 petition is whether the district court committed clear error in concluding that the defendant "carried" a firearm "during and in relation to" a drug trafficking crime in violation of 18 U.S.C. § 924(c)(1) when (1) the defendant took the gun, and together with several syringes, placed it in his wife's purse on the critical day in the drug trafficking conspiracy, (2) other members of the drug conspiracy also carried guns, and (3) other members of the conspiracy told government agents that the group used guns for protection while manufacturing drugs. Against this weighty evidence, the defendant asserts only that he did not "carry" the gun "during and in relation to" a drug trafficking crime because he had previously given the gun to his wife as a result of her rape at a young age. Concluding that the district court did not commit clear error, I respectfully dissent.

We review challenges to the factual basis for a guilty plea under FED. R. CRIM. P. 11(f) only for clear error. *See United States v. Rivas*, 85 F.3d 193, 194 (5th Cir. 1996). Section 924(c)(1), by its very terms, requires three elements to sustain a conviction under its "carry" prong: (1) there is a crime of violence or drug trafficking crime; (2) the firearm is "carried," and (2) such "carrying" is "during and in relation to any crime of violence or drug trafficking." The majority assumes that Schmalzried's carrying

8

of the gun and placement of it into his wife's purse along with several syringes satisfies the "carry" requirement. The majority asserts, however, that no nexal link exists between Schmalzried's carrying of the gun and the drug offense (and hence, Schmalzried did not carry the gun "during and in relation to" the drug trafficking crime) because we purportedly do not know when the gun was placed in the purse, where the purse was when the gun was placed in the purse, or how the placement of the gun into the purse facilitated the conspiracy.[7] Contrary to the majority's conclusion, relevant case law, as well as the record in this case, supports the district court's conclusion that Schmalzried carried the gun "during and in relation to" his drug trafficking crime.

In *Smith v. United States*, 508 U.S. 223, 237-38, 113 S. Ct. 2050, 2058-59, 124 L. Ed. 2d 138 (1993), the Supreme Court gave an expansive interpretation to the phrase "during and in relation to":

> The phrase "in relation to" is expansive . . . as
> the Courts of Appeals construing § 924(c)(1) have
> recognized . . . According to Webster's, "in relation to"
> means "with reference to" or "as regards." The phrase
> "in relation to" thus, at a minimum, clarifies that the

---

[7]   Contrary to the majority's unfounded assertion that "[t]he dissent reads Smith to interpret 'during and in relation to' to mean that the *firearm* must have some purpose or effect with respect to the drug trafficking crime, but that no such nexus is required between 'carrying' the firearm and the drug offense," I agree with the majority opinion that a nexal link is required between the carrying of the gun and the predicate drug offense. *See* Majority Op. at 5. As a factual matter and as I discuss below, however, I believe that the requisite nexal link exists in this case.

9

firearm must have some purpose or effect with respect to the drug trafficking crime; its presence or involvement cannot be the result of accident or coincidence. As one court has observed, the "in relation to" language "allay[s] explicitly the concern that a person could be" punished under § 924(c)(1) for committing a drug trafficking offense "while in possession of a firearm" even though the firearm's presence is coincidental or entirely "unrelated" to the crime. Instead, the gun at least must "facilitat[e], or ha[ve] the potential of facilitating," the drug trafficking offense.

*Id.* (citations omitted); *see also Muscarello v. United States*, 118 S. Ct. 1911, 1918 (1998) ("Congress added these words ['during and in relation to'] in  part to prevent prosecution where guns 'played' no part in the crime."). The Supreme Court's decision in *Bailey v. United States,* 516 U.S. 137, 116 S. Ct. 501, 133 L. Ed. 2d 472 (1995), did not disturb the meaning of this phrase. *See United States v. Tolliver*, 116 F.3d 120, 125 (5th Cir. 1997).

A rendition of the facts, as detailed in the government's proffer and attached affidavits of federal officers, indicates the reasonableness of the factual basis for the district court's conclusion that Schmalzried carried the gun and that a nexal link existed between the carrying of the gun and the drug trafficking

10

crime. Drug Enforcement Agency ("DEA") agents in Tyler, Texas, learned, on or about December 8, 1990, that several persons had traveled from Houston, Texas to Tyler to manufacture drugs. DEA agents also learned at approximately the same time that a chemical company in Alabama had shipped chemicals necessary to manufacture methamphetamine to Tyler by Federal Express. DEA agents, assisted by local police officers, began surveillance of various locations on December 10, and spotted a U-Haul truck at a local motel. The U-Haul truck had been rented in Houston by James Smertneck, who happened to be the same person to whom the shipment of chemicals was to be delivered. Subsequent surveillance over the next few days identified Smertneck, Michael Edmond Swisher, Susan Ann Lindsey, Vera Lynn McDonald, Robert Wilmer Schmalzried (the defendant here), and Kelly Anne Schmalzried ("Kelly Anne;" Robert Wilmer Schmalzried's wife) coming and going between the motel and a residence at 3023 Benbrook Drive in Tyler.

Events came to a head on December 12. At around 10:15 a.m., agents observed Smertneck and Lindsey leave the residence at 3023 Benbrook and drive to the Federal Express office to pick up the chemicals in a car. On the way to the Federal Express office, Smertneck drove erratically, making several u-turns and cut-backs, as if in an attempt to determine whether he was being followed. Smertneck eventually arrived at the Federal Express office, picked up the chemicals, and returned to 3023 Benbrook. After unloading the chemicals, several (unidentified) members of the group got in

11

the car at 10:51 a.m. and drove to the motel where the U-Haul was located. At 11:26 a.m., both the car and U-Haul left the motel and drove to 3023 Benbrook. Members of the group then unloaded the U-Haul, making a total of nine trips to do so. Another member of the group left 3023 Benbrook, drove to K-Mart, and returned to the residence. Members of the group apparently then settled down to manufacture methamphetamine, the manufacture of which takes eight hours. While they were doing so, agents swore out a search warrant, and executed the warrant at approximately 8:30 p.m. that night. When agents executed the warrant, they found Schmalzried, Kelly Anne, and Smertneck clustered around the methamphetamine manufacturing apparatus. Swisher and McDonald were located in other rooms in this house. Agents later determined that the apparatus and quantity of chemicals in the house was sufficient to produce 1.5 kg to 2 kg of methamphetamine. Agents also discovered a loaded .25 caliber semi-automatic pistol in the purse of Kelly Anne lying on the coffee table in the living room.[8] Kelly Anne told agents that Schmalzried had put the gun in her purse earlier that same day along with two syringes. She further told police that she had seen Schmalzried handling the gun earlier that day. Police executed another search warrant at the motel where the U-Haul had previously been seen. The police discovered Lindsey at the motel, who had in her possession a fully loaded 12-gauge

---

[8] Schmalzried was charged with violating § 924(c)(1) based on this pistol.

12

shotgun. She told agents that Swisher had directed her to carry the shotgun from the cab of the U-Haul truck into the motel room. Lindsey told also agents that the group had firearms to protect themselves and the drugs while they were being manufactured.

Several inferences emerge from this evidence. First, Schmalzried was indicted for conspiracy to manufacture methamphetamine. We have, on several occasions, suggested that all of the acts that occur during a conspiracy can be considered in determining the sufficiency of the factual basis for a § 924(c)(1) guilty plea in cases where the defendant is charged with, but not convicted of, conspiracy. *See United States v. Ramos-Rodriguez*, 136 F.3d 465, 467 (5th Cir. 1998) ("This court has recognized that [§ 924(c)(1)] does not require an underlying conviction . . . It is the 'fact of the offense, and not a conviction, that is needed to establish the required predicate.'") (quoting *United States v. Munoz-Fabela*, 896 F.2d 908, 910-11 (5th Cir. 1990)) (upholding a conviction for violation of § 924(c)(1) based on events covered by an indictment for conspiracy that the government had dismissed as part of a plea bargain). Thus, although Schmalzried pled guilty only to possession of controlled substances and the § 924(c)(1) violation, because the government indicted Schmalzried for conspiracy, all of the other actions occurring during the conspiracy were properly before the district court in determining whether Schmalzried carried the gun "during and in relation" to the

13

drug trafficking crime. *See also United States v. Wainuskis*, 138 F.3d 183, 187-88 (5th Cir. 1998).

Second, the majority misconstrues the record when it states that we do not know "whether he [Schmalzried] brought the pistol into the house." Members of the group, including Schmalzried, traveled to Tyler specifically to manufacture drugs.[9] Thus, unlike the case in which an individual is arrested in his own home and a gun and drugs are present, the district court could reasonably conclude that the only items that members of this group (including Schmalzried) had with them were those items that they had brought. As the Supreme Court recently noted in *Muscarello*, 118 S. Ct. at 1916, § 924(c)(1)'s "chief legislative sponsor has said that the provision seeks 'to persuade the man who is tempted to commit a federal felony to leave his gun at home'" (quoting 114 Cong. Rec. 22231 (1968) (Rep. Poff)). *See also Busic v. United States*, 446 U.S. 398, 405, 100 S. Ct. 1747, 1752, 64 L. Ed. 2d 381 (1980) (noting that Representative Poff's statements are "crucial material" in interpreting the purpose of § 924(c)).

Neither Schmalzried nor the majority disputes the fact that Schmalzried carried the gun "during" the period in which the conspiracy continued. Conspiracy to manufacture methamphetamine is a continuing crime. *See United States v. Thomas*, 12 F.3d 1350,

---

[9] Although some group members came from Houston, Schmalzried lived in Mineral Wells, Texas, at the time of the offense. Mineral Wells is west of Dallas and a good distance from Tyler.

14

1370 (5th Cir. 1994). The evidence indicates that the conspiracy began, at the latest, on December 8, when group members traveled from Houston to Tyler, and when Smertneck ordered the chemicals necessary to manufacture methamphetamine. Schmalzried carried the gun on December 12, "during" the requisite period of drug trafficking activities.

Thus, the majority's outcome hinges on the proposition that Schmalzried did not carry the gun "in relation to" the conspiracy (*i.e.,* that no nexal link exists between Schmalzried's carrying of the gun and the predicate drug offense). It asserts that "[t]he record is silent on a number of facts, and that silence prevents us from drawing an inference that by its carriage, the firearm had such a purpose or effect." Contrary to this assertion, however, because we know that Schmalzried's carrying of the gun and his placement of it into his wife's purse sometime on December 12))a day during which members of the group procured chemicals, went to various locations to retrieve the methamphetamine manufacturing equipment, and manufactured methamphetamine all day long))the precise time at which he did so is irrelevant. Kelly Anne's statements to DEA agents that she saw Schmalzried carrying the gun earlier that day and that he personally placed the gun in her purse are highly significant: Schmalzried's carrying of the gun occurred during the critical period in the conspiracy when the chemicals were being gathered, materials assembled, and drugs manufactured,

15

suggesting that the firearm had some "purpose or effect" with respect to either the manufacture of methamphetamine or the drug conspiracy. *See Smith*, 508 U.S. at 238, 113 S. Ct. at 2059; *see also United States v. McKeever*, 906 F.2d 129, 134 (5th Cir. 1990) (Davis, J.) ("Where several guns . . . are found on the premises of a drug laboratory, the obvious inference is that they were there to protect the unlawful activity."). Schmalzried's carrying of the gun also occurred as he placed the gun in the purse along with syringes of a sort that are commonly used for intravenous drug use, further indicating the close link between the gun and drugs and suggesting that the gun's "presence or involvement [was] not the result of accident or coincidence." *Smith*, 508 U.S. at 238, 113 S. Ct. at 2059; *United States v. Beverly*, 921 F.2d 559, 563 (5th Cir. 1991) ("There is [] no doubt that firearms are drug traffickers' tools of trade.").

The majority simply fails to address the possibility that the requisite nexal link between the carrying of the gun and the conspiracy exists as a result of the gun's *potential* to protect the group's activities. On the morning of December 12, members of the group were constantly coming and going from 3023 Benbrook and taking various actions related to the conspiracy. Judging from Smertneck's evasive driving when he went to pick up the chemicals at the Federal Express office, group members appear to have worried that they might be under police surveillance. Schmalzried's

16

carrying of the gun and his placement it into Kelly Anne's purse, an item that she would be unlikely to leave behind if she left the house, is important because that location may have provided Schmalzried with a handy way to keep the gun nearby in case needed, whether in the house or in another location, from whence it *could* have been used to facilitate the group's activities. *See Smith*, 508 U.S. at 238, 113 S. Ct. at 2059; *see also Tolliver*, 116 F.3d at 126 (upholding conviction under § 924(c)(1) where firearm potentially could have been used to protect drugs); *United States v. Capote-Capote*, 946 F.2d 1100, 1104 (5th Cir. 1991) ("Weapons in the home may facilitate a drug crime because the defendants could use the guns to protect the drugs."). Additionally, methamphetamine manufacture takes eight hours; during this time, group members had to remain at 3023 Benbrook to monitor the manufacturing process. Placing the fully loaded gun in a purse in plain view on a coffee table in the living room of the house where the manufacturing was taking place, a spot that Schmalzried admitted to the district court at the Rule 11 plea colloquy was readily accessible, ensured that he could quickly utilize the gun to fend off intruders or police. *See Smith*, 508 U.S. at 238, 113 S. Ct. at 2059; *see also Capote-Capote*, 946 F.2d at 1104. These latter two points)) completely unaddressed by the majority))provide clear examples of how Schmalzried's carrying of the weapon "somehow furthered or facilitated the underlying offense." *Triestman v. Keller*, No. 97-

17

CV-1460, 1998 52026, at *3 (N.D. N.Y. Feb. 2, 1998). Accordingly, even if the record does not indicate the precise time that Schmalzried placed the gun in his wife's purse or where the purse was located when he placed the gun in the purse, the extent of the group's drug manufacturing activities on December 12 and the gun's *potential* to further the group's activities support the district court's conclusion that Schmalzried's carrying of the gun and his placement of the gun into his wife's purse was "in relation to" the group's activities. *See Smith*, 508 U.S. at 238, 113 S. Ct. at 2059; *see also Ramos-Rodriguez*, 136 F.3d at 469 (upholding a conviction under § 924(c)(1) even where it was not clear precisely when a defendant had carried a gun because "the court is satisfied at some point during and in relation to this drug trafficking crime" the defendant had done so).

The government proffer and technical reports attached to the proffer indicate that the group possessed chemicals sufficient to manufacture 1.5 kg to 2 kg of methamphetamine. The sheer quantity of this amount of methamphetamine also gives rise to an inference that the group might want to have some way to protect its investment. *See United States v. Wilson*, 884 F.2d 174, 177 (noting that "the sheer volume of weapons and drugs makes reasonable the inference that the weapons involved were carried in relation to the predicate drug offense since they 'increase[] the likelihood [the drug offense will] succeed'") (quoting *United States v. Robinson*,

18

857 F.2d 1006, 1010 (5th Cir. 1988)).  This inference is further strengthened by the fact))again not addressed by the majority opinion))that other members of the group stated to government agents that the group carried weapons "during and in relation to" the conspiracy.  When police executed a search warrant on the motel room near which the U-Haul had been parked, Lindsey had a fully loaded 12-gauge shotgun.  She also told police that the group used guns to protect themselves and the drugs.  *See United States v. Rocha*, 916 F.2d 219, 237 (5th Cir. 1990) (noting that the presence of a gun carried by a fellow conspirator supported a finding that defendant carried a weapon "during and in relation to" a drug trafficking crime).  Accordingly, both the amount of drugs and the actions of other members clearly support the district court's inference that Schmalzried carried the gun "in relation to" the group's activities.

The Tenth Circuit's decision in *United States v. Lampley*, 127 F.3d 1231, 1240-42 (10th Cir. 1997), cited in the majority opinion at 6, is directly on point.  Lampley and his co-defendants were convicted by a jury of conspiracy to make explosive devices for use against government facilities and carrying firearms "during and in relation to" the conspiracy.  Like Schmalzried, on appeal, Lampley argued that no nexal link existed between the group's carrying of the firearms and the conspiracy because the group had purchased the guns only after other persons made death threats against Lampley.

19

The Tenth Circuit concluded that, although some evidence indicated that Lampley had bought the gun for reasons not related to the conspiracy, a jury could have also reasonably concluded that Lampley subsequently carried the gun "during and in relation to" the conspiracy.

Like Lampley's argument that the Tenth Circuit rejected, standing alone in the face of this imposing mass of evidence against Schmalzried is his self-serving assertion that he did not carry the gun "during and in relation to" the manufacture of methamphetamine or the drug conspiracy because he had given the gun to his wife, Kelly Anne, as a result of her rape as a child. Although I find that the above evidence both casts serious doubt on the veracity of this assertion and suggests that the firearm *could* have been used to protect the group's activities (which Schmalzried does not dispute and which would provide the necessary nexal link between the carrying and the predicate drug offense), assuming, *arguendo*, that his statement is true, we have held that we look not solely to the defendant's intent, but also to the totality of the circumstances, in determining whether the defendant's carrying of the firearm was "during or in relation to" his drug trafficking crime. *See United States v. Pace*, 10 F.3d 1106, 1119 (5th Cir. 1993) (collecting Fifth Circuit cases analyzing the meaning of the phrase "during and in relation to"). When weighed against the totality of the circumstances, I simply fail to see how the

district court's choice not to credit Schmalzried's self-serving assertion can be viewed as clearly erroneous.

Accordingly, I respectfully DISSENT.