**UNITED STATES, Appellee,**

v.

**George CURRIER, Jr., a/k/a Gio,
Defendant, Appellant.**

**No. 97–2234.**

United States Court of Appeals,
First Circuit.

Heard May 4, 1998.

Decided Aug. 13, 1998.

Joseph J. Balliro, Sr., with whom Balliro & Mondano and Victoria L. Nadel were on brief, for appellant.

Kevin J. Cloherty, Assistant United States Attorney, with whom Donald K. Stern, United States Attorney, and Geoffrey E. Hobart, Assistant United States Attorney, were on brief, for appellee.

Before TORRUELLA, Chief Judge,
SELYA and LYNCH, Circuit Judges.

TORRUELLA, Chief Judge.

George Currier was arrested in connection with a large undercover investigation and sting operation of cocaine and methamphetamine sales involving the Boston area Hell's Angels Motorcycle Club. He was eventually indicted and convicted of numerous drug trafficking crimes. Currier appeals only one of those counts. The count at issue is Count

Twenty, carrying and using a firearm during and in relation to a drug trafficking crime in violation of 18 U.S.C. § 924(c)(1). Unlike the other charges, this Count did not arise out of the undercover investigation, but specifically out of an incident during the execution of Currier's arrest warrant in which he drew his gun on an arresting officer. The narrow issue on appeal is whether Currier's use of his revolver was "in relation to" his drug trafficking offenses. We agree with the district court that it was, and therefore affirm.

## BACKGROUND

On September 5, 1996, the DEA concluded an investigation into various drug trafficking activities of members of the Salem, Massachusetts Chapter of the Hell's Angels Motorcycle Club with the arrest of sixteen people and the execution of ten search warrants. Currier, who is not a member of the Hell's Angels, was arrested on that day for his role in arranging cocaine and methamphetamine sales with the motorcycle club. The § 924(c) charge at issue in this case is based on events that took place during Currier's arrest in the early morning hours of September 5, 1996.

As the members of the Currier arrest team approached the basement door of Currier's apartment, they loudly announced, "State Police, DEA, Police" and knocked on the door. When no one responded, a Revere, Massachusetts police officer assigned to the arrest and search team used a battering ram to make a forcible entry into the apartment. On his first attempt to break in the door, the officer accidentally missed the wooden frame of the door and broke the door window. On his second attempt, the door lock gave way and the door opened. As the door opened and entry was made, the members of the arrest team continued yelling, "State Police, DEA, Police!"

When Sergeant Martin Conley of the Massachusetts State Police, a member of the arrest and search team, stepped into the apartment he noticed a closed door just behind the open front door to the apartment. Sgt. Conley tried to kick open the closed door. Although the door initially opened, the door met with resistance and shut. Sgt.

Conley kicked the door a second time and it opened.

When the door opened, Sgt. Conley was staring down the barrel of the suspect's silver revolver. Currier, who was not clothed at the time, was standing about four feet from the entrance to the door in a "shooter's stance," with the gun pointed directly at the officer. Sgt. Conley, who also had his gun drawn, ordered Currier to drop his weapon. Currier remained in a shooter's stance. Sgt. Conley again ordered Currier to drop his weapon. This time, Currier took a step back and dropped his weapon. He was then placed under arrest.

During the search of Currier's apartment, Sgt. Conley discovered approximately ten ounces of methamphetamine hidden in the drop ceiling of the bedroom, close to where Currier was standing when he confronted Sgt. Conley. Officers also found piles of money in elastic bands on Currier's bed. A total of $4,225 was recovered from Currier's bedroom, as well as a triple beam scale. The arresting officers took custody of Currier's weapon, a Smith & Wesson .357 magnum, six-shot revolver loaded with hollow-point ammunition.

Currier elected a bench trial on the count at issue. At the conclusion of the evidence and after hearing argument from the parties, the district court found Currier guilty of violating 18 U.S.C. § 924(c). After announcing the guilty verdict, the district court explained its verdict as follows:

> [T]he court finds beyond a reasonable doubt that you were at all material times relevant to Count 20 engaged in a drug trafficking offense, that is, the possession of methamphetamine with the intent to distribute it. The court likewise finds beyond a reasonable doubt that your conduct in grabbing the weapon and pointing it at the police officer constitutes a use of the weapon.

> The question, the closest question, is whether your use of the weapon was "in relation to" the drug trafficking offense. I do not see, despite Mr. Balliro's able argument, that *Bailey* intended to retreat from the language in *Smith v. United States*

that the gun must at least facilitate or have the potential of facilitating the drug trafficking offense. The way I interpret it is—and I believe beyond a reasonable doubt, that you had that weapon there to facilitate drug trafficking.

But I recognize that *Bailey* requires more. That if you had not reached for the weapon, you could not be convicted of this offense. Here, you reached for the weapon which you had there to facilitate the drug trafficking offense, and consistent with the reasoning in *United States v. Tolliver,* which is virtually on all fours with this case, I think that a guilty finding is ... warranted.

In fairness to you, however, let me say that I have a reasonable doubt concerning whether when you snatched that weapon up and pointed it at a police officer, you had any thought at all at that instant about drugs or about drug proceeds. I do not think that, at that time in the, in that frenetic moment, the government has proved beyond a reasonable doubt that one of your purposes was to get the drugs or the drug paraphernalia or the proceeds out of that apartment with you. The most that I think is proved is that, beyond a reasonable doubt, is that you snatched up that weapon to get yourself out of there.

The narrow issue on appeal is whether, in light of these findings, the district court properly found that Currier's use of his revolver was "in relation to" his underlying trafficking offenses.

### ANALYSIS

■ Section 924(c)(1) of Title 18 imposes a five-year, consecutive term of imprisonment upon any person who "during and in relation to any crime of violence or drug trafficking crime ... uses or carries a firearm." There are essentially three elements to a § 924(c) offense: (1) that the defendant committed the predicate drug trafficking crime or crime of violence; (2) that the defendant knowingly carried or used a firearm; and (3) that the defendant did so during and in relation to the specified predicate offense. *See United States v. Manning,* 79 F.3d 212, 216 (1st Cir.1996). Currier does not deny that he

committed the predicate drug trafficking crime or that his brandishing of his revolver on the morning of September 5, 1996, constitutes a "use" under 18 U.S.C. § 924(c)(1). *Cf. Bailey v. United States,* 516 U.S. 137, 148, 116 S.Ct. 501, 133 L.Ed.2d 472 (1995) (weapon must be brandished, displayed, bartered, or fired in order to constitute "use"). He only disputes that the requisite nexus existed, i.e., that his gun was used "during and in relation to" his drug trafficking offenses.

■ Currier acknowledges that grabbing a gun in hopes of postponing or escaping an imminent arrest for an underlying drug trafficking crime violates § 924(c)(1). *See, e.g., United States v. Johnson,* 87 F.3d 133, 138 (5th Cir.1996) (per curiam). He argues, however, that he was only using his gun in self-defense, and that he dropped the gun as soon as he recognized that the police were involved. If, indeed, Currier was using his gun only for self-defense, and had formed no intent to evade or escape arrest, or to facilitate his drug trafficking in any other way, then his conviction under § 924(c)(1) might well be improper. "The phrase 'in relation to' ... at a minimum, clarifies that the firearm must have some purpose or effect with respect to the drug trafficking crime; its presence or involvement cannot be the result of accident or coincidence." *Smith v. United States,* 508 U.S. 223, 237–38, 113 S.Ct. 2050, 124 L.Ed.2d 138 (1993).

Currier maintains that the district court's factual findings recited above, which he does not find erroneous, support his self-defense claim. The question presented in this case, then, is whether those district court findings support Currier's self-defense argument, or, at the very least, are ambiguous. We conclude that, while the findings do not explicitly reject Currier's version of the facts, they do so unambiguously.

The first indication that the district court rejected Currier's self-defense argument is the statement that, "consistent with the reasoning in *United States v. Tolliver,* which is virtually on all fours with this case, I think that a guilty finding is ... warranted." In *United States v. Tolliver,* 116 F.3d 120 (5th

Cir.1997), *cert. denied,* —— U.S. ——, 118 S.Ct. 324, 139 L.Ed.2d 251 (1997) one of the appellants, Shane Sterling, reached for his pistol when federal agents stormed into his bedroom to arrest him. *See id.* at 124. Also in Sterling's apartment at the time of the raid were drug records and a cache of weapons. *See id.* at 126. Sterling maintained that his act of reaching for his gun was one of "misguided self-defense," not one "in relation to" a drug trafficking offense. In affirming Sterling's § 924(c) conviction, the Fifth Circuit noted that the jury rejected Sterling's self-defense theory, and concluded that his attempt to reach his gun could have facilitated the conspiracy by preventing the arrest of a co-conspirator and "forestalling the seizure of various instrumentalities of the conspiracy." *Id.* at 125–26. We can only conclude that the district court found *Tolliver* to be "virtually on all fours with this case" because he rejected Currier's self-defense theory and determined that his snatching of his gun could have facilitated the underlying drug trafficking crimes. The district court judge would not have found *Tolliver* directly applicable to the present case if he had accepted Currier's self-defense argument.

The second indication that the district court judge rejected Currier's self-defense argument is his statement that "the most that I think is proved is that, beyond a reasonable doubt, is that you snatched up that weapon to get yourself out of there." If the judge had accepted Currier's version of the facts, he might have said, "you snatched up that weapon to defend yourself," or, "to protect yourself," or even, "because you were afraid for your safety." Instead, he used the language of escape when he said "get yourself out of there." This statement is clearly at odds with Currier's version of the facts.

Yet another clue to the district court's implicit findings can be gathered from what was *not* said during the announcements following the delivery of the verdict. At no time did the district court mention self-defense, or anything related to self-defense. If the district court judge had been moved to accept Currier's argument, he would likely have so indicated in some manner. Instead, he reasonably assumed that he had made his

rejection of that argument clear through his *Tolliver* analysis, his "get yourself out of there" comment, and, ultimately, his decision to convict Currier on the § 924(c)(1) charge. There is nothing to prevent this court from making the obvious inference in this case. The district court concluded that Currier grabbed the gun with the intention of escaping or forestalling his arrest, and, however short-lived that notion, his conviction under 18 U.S.C. § 924(c)(1) was proper.

## CONCLUSION

For the reasons stated herein, we *affirm* the judgment of the district court.