**George CURRIER, Jr., Petitioner**

v.

**UNITED STATES of America, Respondent.**

**No. CIV. A. 99–12554–EFH.**

United States District Court, D. Massachusetts.

Sept. 4, 2001.

---

Kent Russell, Russell and Russell, San Francisco, CA, for George Currier, Jr.,

George W. Vien, U.S. Attorney's Office, Boston, MA, for U.S.

## MEMORANDUM AND ORDER

HARRINGTON, Senior District Judge.

Petitioner George Currier, Jr., is before the Court seeking a writ of habeas corpus under 28 U.S.C. § 2255. On October 6, 1997 petitioner was sentenced to a term of imprisonment of sixteen years, eleven of which were for conviction on drug trafficking offenses to which the petitioner had pleaded guilty. The remaining five years were imposed as a consecutive sentence pursuant to 18 U.S.C. § 924(c)(1) (prohibiting the use of a firearm during and in relation to a drug trafficking offense), after the petitioner was found guilty of that charge in a non-jury trial before District Judge Young. The petitioner now seeks to vacate his conviction on the Section 924(c)(1) charge and correct his sentence based on a claim of ineffective assistance of counsel in violation of the Sixth Amendment to the United States Constitution.

The alleged ineffective assistance of counsel claim arises from defense counsel's failure to adequately raise, prepare or present the only viable defense to the charge, namely, self-defense. After an evidentiary hearing and oral argument on the matter, the Court rules that the petitioner's trial counsel was ineffective and so grants his petition for relief pursuant to Section 2255. The petitioner's conviction on the Section 924(c)(1) charge is vacated and his sentence is corrected to a term of imprisonment of eleven years.

In its review of the petitioner's conviction, the Court of Appeals for the First Circuit in *United States v. Currier*, 151 F.3d 39 (1st Cir.1998), affirmed the following relevant facts as found by the trial court. On September 5, 1996 the Drug Enforcement Agency (DEA) concluded an investigation into various drug trafficking activities of the members of the Salem, Massachusetts Chapter of the Hell's Angels Motorcycle Club with the arrest of sixteen people and the execution of ten search warrants. The petitioner, who is not a member of the Hell's Angels, was arrested on that day for his role in arranging cocaine and methamphetamine sales with members of the motorcycle club. The Section 924(c)(1) charge arose out of events that took place during the petitioner's arrest in the early morning hours of September 5, 1996. At about 5:00 A.M., the Massachusetts State Police, DEA, and local police executed a search warrant on the apartment the petitioner shared with his then-girlfriend, Amy St. Amand. The police knocked loudly on the door and announced, "State Police, DEA, Police." When no one responded, a Revere, Massachusetts police officer used a battering ram to make a forcible entry to the apartment, as the search warrant authorized him to do. On his first attempt, the officer accidentally missed the wooden door and

shattered a window in the door. On the second attempt, the door lock gave way and the door opened. As the entry was made, the members of the arrest team continued yelling, "State Police, DEA, Police."

When Sergeant Conley of the Massachusetts State Police, a member of the team, stepped into the apartment, he noticed a closed door just behind the opened front door. Sergeant Conley tried to kick open the door, and after opening it slightly, met with resistance. Sergeant Conley kicked the door a second time and it opened.

When the door opened, Sergeant Conley was staring at the petitioner who was in a shooter's stance, holding a silver revolver pointed at the officer. Sergeant Conley, who also had his weapon drawn, ordered the petitioner to drop his gun. After Sergeant Conley told the petitioner to drop the gun a second time, the petitioner took a step back and dropped his gun to the floor. He was then placed under arrest.

During the search of the petitioner's apartment, Sergeant Conley discovered approximately ten ounces of methamphetamine hidden in the drop ceiling of the bedroom, close above the place where the petitioner was standing when he was confronted by Sergeant Conley. Officers also recovered money totaling $4,225 and a triple beam scale in the search of the bedroom.

Shortly after his arrest, the petitioner was charged and pleaded guilty to drug offenses pursuant to 21 U.S.C. §§ 841(a)(1), 846, and 853. The petitioner was also charged with one count of using a firearm "during and in relation to [a] drug trafficking crime" under 18 U.S.C. § 924(c)(1) for the act of grabbing his handgun and pointing it at Sergeant Conley. The petitioner was convicted on the single Section 924(c)(1) charge after a two-day bench trial.

At issue in this case is whether the petitioner was denied effective assistance of counsel when he was tried on the Section 924(c)(1) charge. The petitioner's claim of ineffective assistance of counsel turns on the two-prong test established by the Supreme Court in *Strickland v. Washington*, 466 U.S. 668, 688, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). First, the petitioner must show that "in light of all the circumstances, the identified acts or omissions were outside the wide range of professionally competent assistance." *Id.* at 690, 104 S.Ct. 2052. Second, the petitioner must show that counsel's performance prejudiced him. *See id.* at 694, 104 S.Ct. 2052. To do this, the petitioner must demonstrate a reasonable probability that "but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.* A "reasonable probability" is defined as "a probability sufficient to undermine confidence in the outcome." *Id.* The reviewing court must consider "whether the result of the proceeding was fundamentally unfair or unreliable." *Scarpa v. DuBois*, 38 F.3d 1, 16 (1st Cir.1994), quoting *Lockhart v. Fretwell*, 506 U.S. 364, 369, 113 S.Ct. 838, 122 L.Ed.2d 180 (1993). After an evidentiary hearing on the matter and after examining the record in this case, this Court has identified several omissions that give rise to a reasonable probability that the petitioner was prejudiced.

During the bench trial before Judge Young, defense counsel neither raised nor presented any affirmative defense. Rather, defense counsel relied solely on his belief that the government could not establish an essential legal element of the crime, namely, that the petitioner used his gun "in relation to" a drug offense. Apparently, defense counsel was not fully cognizant of the implications of *United States v. Tol-*

*liver,* 116 F.3d 120 (5th Cir.1997), a case decided by the Court of Appeals for the Fifth Circuit approximately six weeks before the petitioner's trial, as defense counsel failed to address the case in his trial brief or in any filings to the court. In *Tolliver,* the Court of Appeals for the Fifth Circuit held that a defendant's act of reaching for a gun in self-protection when federal agents stormed his bedroom constituted use "in relation to" a drug trafficking crime, even though drugs were not found on the premises. *Id.* at 124–126. The Court noted that self-defense is a valid defense to a Section 924(c)(1) charge and that the question of use "in relation to" the underlying drug act is a mixed question of law and fact. The defendant in *Tolliver* presented his "sleepy act of self-defense" defense to the jury and the jury rejected it. The Court explicitly stated that it was obliged to adopt the jury's factual finding that the defendant had not acted in self-defense since that finding was not clear error. *Id.* at 125. In essence, the Court of Appeals for the Fifth Circuit reviewed the factual issue of self-defense only for clear error, but addressed the very same legal question that defense counsel said was "the whole ball game" in the petitioner's case, namely, whether as a matter of law, a defendant found holding a gun when the police rush into his bedroom during a drug bust can be considered using a firearm "in relation to" a drug offense under Section 924(c)(1). The Court of Appeals for the Fifth Circuit ruled that such use can satisfy the "in relation to" requirement of Section 924(c)(1), even in cases such as *Tolliver* where drugs are not found on the premises. In prosecuting the petitioner, the government relied heavily on *Tolliver* in its trial brief and in its argument before the trial court, while defense counsel did nothing to distinguish the petitioner's case, stating simply that he thought *Tolliver* was "wrongly decided."

Defense counsel asked the trial court to rule differently on the matter of law which the Court of Appeals for the Fifth Circuit had just decided, but did not provide the trial court with any reason to do so.

The weight of *Tolliver* was overwhelming. The trial court stated in its ruling that *Tolliver* was "virtually on all fours" with the petitioner's case. *United States v. Currier,* 151 F.3d 39, 41 (1st Cir.1998). Certainly defense counsel should have recognized that the petitioner's case presented an even less persuasive factual situation than did *Tolliver* on the legal question of use of a firearm "in relation to" a drug offense because the petitioner's use of a gun was in close physical proximity to the stash of narcotics, whereas in *Tolliver* no narcotics were found on the premises.

On the other hand, the petitioner's case presents a more persuasive factual situation than did *Tolliver* for a claim of self-defense. Unlike in *Tolliver,* where the defendant was found sharing the dwelling with a co-conspirator in the drug offenses and with a "cache of assault weapons," factors critical to the Court of Appeals for the Fifth Circuit, the petitioner shared his apartment with his girlfriend and was found with only one weapon, hardly the arsenal found in *Tolliver.*

In addition to these distinctions from *Tolliver,* the petitioner could have presented persuasive evidence as to why he owned a gun and why he grabbed it on the morning of September 5, 1996. If presented to the fact-finder, these factors might well have supported a viable claim of self-defense. The petitioner testified before this Court that a robbery had taken place in his apartment building just days before the police forcibly entered his bedroom. Further, his girlfriend was employed as an exotic dancer and had been frightened by the stalking behavior of several customers. Also, the petitioner was working as a secu-

rity guard for an escort service, which embroiled him in a number of hostile encounters, and for a friend in the restaurant business who paid the petitioner to accompany him to the bank with proceeds from the restaurant in the late hours after the restaurant had closed. Each of these affiliations and the occurrence of the robbery in his building just days before the police raid could have been relevant to the fact-finder in the petitioner's case had a self-defense claim been presented.

The petitioner further testified about the entry by the police early on the morning of September 5, 1996. His account is corroborated by the testimony given at his bail hearing by Amy St. Amand, the petitioner's girlfriend at the time and the only other person in the apartment when the police entered. A transcript of her sworn testimony at the bail hearing reflects a viable claim of self-defense, and cross-examination appears to have done nothing to undermine her credibility. Under oath, she testified that she was awakened early in the morning by the sound of shattering glass. Immediately, she woke the petitioner and urged him to grab his gun because she thought an intruder was breaking into the apartment. St. Amand testified that amidst her sleep, and with a noisy air conditioner running, she could not hear any announcement of "State Police, DEA, Police." Further, she testified that the bedroom was entirely dark, except for shining flashlights, and in the matter of seconds before the petitioner dropped the gun, it was not clear to her that the people entering the room were police officers. It appears that testimony of St. Amand could have supported a claim of self-defense.

Unlike the Court of Appeals for the Fifth Circuit in *Tolliver*, which accepted the jury's factual finding that self-defense had been presented and rejected, Judge Young, as the fact-finder, was not present-ed with any affirmative evidence of self-defense. Ultimately, at defense counsel's urging, the trial court was left with only the legal question of whether grabbing a gun and pointing it at police officers in the course of a drug raid, could be considered use of a firearm "in relation to" a drug offense under Section 924(c), the very question the Court of Appeals for the Fifth Circuit had just decided in *Tolliver*.

With no evidence of self-defense before him, Judge Young was left to adopt the facts as presented by the government. Similarly, when defense counsel appealed the petitioner's case to the Court of Appeals for the First Circuit, he was left to argue only those issues raised at trial. The Court of Appeals for the First Circuit reviewed Judge Young's findings of fact only for clear error and determined that the trial court must have implicitly rejected the petitioner's theory of the case, and thus, implicitly, any claim of self-defense. In arriving at its decision, the Court of Appeals for the First Circuit quoted the following language from Judge Young's decision as an indication of his rejection of the petitioner's theory of the case:

> In fairness to you, however, let me say I have reasonable doubt concerning whether when you snatched that weapon up and pointed it at a police officer, you had any thought at all at that instant about drugs or drug proceeds. I do not think that, at that time in the, in that frenetic moment, the government has proved beyond a reasonable doubt that one of your purposes was to get the drugs or the drug paraphernalia or the proceeds out of that apartment with you. The most that I think is proved is that, beyond a reasonable doubt, is that you snatched up that weapon to get yourself out of there.

*United States v. Currier*, 151 F.3d at 41.

The Court of Appeals for the First Circuit, cognizant that self-defense was the

only viable defense to the charge, was compelled to find that the trial court must have implicitly rejected the self-defense claim because the trial court made no explicit finding on this crucial issue. If anything, the trial court appears to have addressed only an unrebutted escape or flight theory advanced by the government. The lack of an explicit finding on the issue of self-defense by the trial court tends to indicate that this defense was not adequately raised.

Evidence before this Court confirms that self-defense was not adequately raised and that the trial court could not have properly ruled on it. Under oath in the evidentiary hearing before this Court, defense counsel took the stand and admitted that he did not raise or present any evidence supporting a claim of self-defense. He never even interviewed or attempted to contact Ms. St. Amand, nor did he review her testimony from the bail hearing. Defense counsel did not make an opening argument nor did he submit a trial brief or findings of fact. He never considered putting the petitioner on the stand and never presented any evidence of self-defense to the trial court.

Defense counsel admitted that he did not even prepare any evidence supporting a claim of self-defense because his sole focus was on the government's inability to show the legal nexus between the gun and the drugs, indeed the very nexus found under the less compelling facts of *Tolliver.* Significantly, the Court of Appeals for the First Circuit made clear that self-defense was an available and a complete defense to the only charge against the petitioner, "If, indeed, Currier was only using his gun for self-defense, and had formed no intent to evade or escape arrest, or to facilitate his drug trafficking in any other way, then his conviction under § 924(c)(1) might well be improper." *United States v. Currier,* 151

F.3d 39, 41 (1998). This Court, with the benefit of direct testimony from defense counsel, is not left to guess whether self-defense was raised before the trial court. Rather, accepting defense counsel's sworn testimony that no evidence of self-defense was before the trial court, this Court rules that self-defense was not adequately raised.

Defense counsel admitted that he made a "misjudgment" about the government's ability to establish the elements of the Section 924(c)(1) charge. In his view, the government failed to carry its burden of proving, beyond a reasonable doubt, the essential nexus between the petitioner's use of his gun when the police burst through the bedroom door and the drugs located in the bedroom ceiling. As a result, the petitioner's defense counsel chose to rest without presenting any affirmative defense before the trial court. That decision alone would not necessarily be grounds for ruling that counsel was ineffective. The choice not to present any defense could be considered a reasoned choice of strategy in certain cases and a petitioner may not seek relief after the fact simply because his desired outcome was not attained. The ineffectiveness assistance of counsel in this case was the utter failure to investigate, prepare and present any evidence at all in support of the petitioner's viable claim of self-defense. *See Tejeda v. Dubois,* 142 F.3d 18, 25 (1st Cir.1998) ("Depriving a criminal defendant of his only viable defense certainly renders the resultant trial 'fundamentally unfair or unreliable' as demanded by *Lockhart.*"); *see also Lord v. Wood,* 184 F.3d 1083, 1094 (9th Cir.1999)("A lawyer who fails to adequately investigate, and to introduce into evidence, [information] that demonstrate[s] his client's factual innocence, or that raise[s] sufficient doubt as to that question to undermine confidence in the verdict, renders deficient performance.").

As the Eighth Circuit ruled in *Chambers v. Armontrout,* 907 F.2d 825 (8th Cir. 1990), granting a petition for a writ of habeas corpus, a defense lawyer who fails to interview or call a witness who could have testified about a defendant's claim of self-defense can be found constitutionally ineffective under the *Strickland* standard. In *Chambers,* a defendant stood trial for murder. In his initial trial, one of only two eyewitnesses to the altercation testified to facts that could have led a jury to find that the defendant acted in self-defense. The defendant was convicted but was granted a new trial because the trial court failed to instruct the jury on self-defense. As the defendant stood trial for the second time, his lawyer failed to interview or call the eyewitness who had previously testified to facts supporting a theory of self-defense. As a result, the defendant presented the court with no affirmative evidence of self-defense. This time the trial court correctly refrained from instructing the jury on self-defense because no evidence thereof had been presented. The Court of Appeals for the Eighth Circuit ruled that defense counsel's failure to interview or call the only witness (other than the defendant himself) who could have testified to facts showing self-defense, deprived the defendant of his right to effective assistance of counsel. The Court wrote:

> [t]he facts of this case . . . indicate there was only one defense upon which [the defendant] could rely: self-defense. That defense was the only realistic defense to the . . . charge. . . . Thus, without . . . testimony [by the only witness other than the defendant who could testify to the circumstance of the crime . . . the defendant] was not permitted to argue self-defense as either a partial or complete defense. . . .

*Id.* at 828–29; *see also Trigones v. Hall,* 115 F.Supp.2d 158, 169 (D.Mass.2000)(citing *Chambers v. Armontrout* for the principle that "failure to investigate and call witness who could support defendant's *only* defense was unreasonable").

The Court of Appeals for the Eighth Circuit's reasoning applies squarely to this case, where "the only realistic defense" available to the petitioner was self-defense and his counsel did nothing to investigate or advance that claim. *Chambers,* 907 F.2d at 828. Defense counsel admitted that, like the defense counsel found ineffective in *Chambers,* he never even interviewed or attempted to contact the only witness other that the petitioner who could have offered evidence that the petitioner acted in self-defense. As in *Chambers,* defense counsel's failure to contact this key witness is especially flagrant because there was record testimony from the witness indicating a viable claim of self-defense. While it appears that there would have been nothing to lose in putting St. Amand on the stand, it was clearly egregious error for defense counsel not even to interview her, review her prior testimony or make any attempt to contact her—error which defense counsel openly admitted on the stand. *See Williams v. Taylor,* 529 U.S. 362, 393–98, 120 S.Ct. 1495, 146 L.Ed.2d 389 (2000)(holding defense counsel constitutionally ineffective for "either fail[ure] to discover or fail[ure] to offer" mitigating evidence.); *Lord v. Wood,* 184 F.3d at 1093 (defense counsel's failure to call, or personally interview, three witnesses who might have exonerated defendant constitutes ineffective assistance of counsel).

Further, counsel admitted that he never even prepared the petitioner to testify, despite the petitioner's impassioned desire and constitutional right to do so. In counsel's view, putting the petitioner on the stand was a bad idea from the outset. Defense counsel reasoned that the peti-

tioner's affiliation with the Hell's Angels might prejudice the trial court. But that reasoning simply does not make sense; defense counsel elected a bench trial instead of a jury trial precisely because he relied on the trial court's ability to decide the case on its merits and not on an emotional response to the surrounding circumstances. Further, the trial court was fully aware of the petitioner's connection to activities of the Hell's Angels as he had already taken the petitioner's plea to the underlying drug charges and had already presided over the prosecutions of the related cases. No further prejudice would have resulted from the petitioner's taking the stand.

In most cases, the decision not to have a defendant testify on his own behalf might well be the right decision and is generally a choice of strategy, not a matter of constitutional ineffectiveness. However, it appears in this case there was little risk in putting the petitioner on the stand. Further, the record is unclear as to whether the petitioner was even aware of his right to testify against the advice of counsel. There were only two witnesses who could possibly offer evidence in support of the petitioner's claim of self-defense and counsel failed to interview or prepare either of them to offer testimony. As the trial unfolded, counsel had no choice but to rest on the theory that the government had failed to meet its burden of proving each element of the charge against the petitioner because he had not prepared any defense whatsoever. It is this failure to do anything at all in preparing a defense, this failure to raise or present any evidence of self-defense, that denied the petitioner his constitutional right to the effective assistance of counsel. *See Williams v. Taylor,* 529 U.S. at 393, 120 S.Ct. 1495; *Tejeda v. Dubois,* 142 F.3d at 25; *Chambers v. Armontrout,* 907 F.2d at 833.

A finding of ineffective assistance of counsel is rare and found in this case only after painstaking consideration. Although not dispositive, defense counsel's own testimony, admitting his misjudgments and omissions, weighs heavily upon this Court. This Court is deeply impressed with the obvious sincerity of defense counsel's testimony and accords great weight to his admission against professional interest. Both lawyers and courts must be careful not to second-guess reasoned tactics and trial strategy. Defendants are guaranteed only effective assistance of counsel, not successful outcomes. But here, defense counsel hinged the entire case on a matter of law, despite the existence of a highly damaging precedent which defense counsel made no effort to distinguish. In that context, his admitted failure to investigate, raise or present the only realistic defense available to the petitioner was unreasonable and violated the petitioner's constitutional right to effective assistance of counsel. The effective assistance of counsel is the indispensable prerequisite to the full exercise of all the other constitutional rights of a defendant.

The Petition for Writ of Habeas Corpus is granted. The petitioner's conviction on the charge of Section 924(c)(1) is vacated and his sentence is corrected to eleven years.

SO ORDERED.