# United States Court of Appeals

## For the First Circuit

---

No. 01-2528

GEORGE CURRIER, JR.,

Petitioner, Appellee,

v.

UNITED STATES OF AMERICA,

Respondent, Appellant.

---

APPEAL FROM THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF MASSACHUSETTS

[Hon. Edward F. Harrington, Senior U.S. District Judge]

---

Before

Torruella, Circuit Judge,
Greenberg,* Senior Circuit Judge,
and Howard, Circuit Judge.

---

Dina Michael Chaitowitz, Assistant United States Attorney, with whom Michael J. Sullivan, United States Attorney was on brief, for appellant.
Kent A. Russell for appellee.

---

February 13, 2003

---

*Of the Third Circuit, sitting by designation.

**HOWARD**, <u>Circuit Judge</u>.  The government appeals an order of the district court vacating the 1997 conviction of appellee George Currier, Jr., for use of a firearm during and in relation to a drug trafficking offense.  <u>See</u> 18 U.S.C. § 924(c)(1).  The government contends that the order, issued under 28 U.S.C. § 2255, is based on an erroneous finding that Currier was victimized by ineffective assistance of counsel during the bench trial leading to the conviction.  We agree and reinstate Currier's conviction.

**I.**

We cull the facts relevant to our ruling from the panel opinion affirming the conviction on direct review, <u>see</u> <u>United States</u> v. <u>Currier</u>, 151 F.3d 39 (1st Cir. 1998), and from the record before the district court during the collateral proceedings.

At about 5:00 a.m. on September 5, 1996, a team of federal and state law enforcement agents gathered outside a basement apartment where Currier was then residing in order to execute a search warrant. The officers knocked on Currier's door and announced their presence, received no reply, and forcibly entered the apartment while continuing to shout that they were police officers.  Almost immediately thereafter, a member of the search team -- Sergeant Martin Conley of the Massachusetts State Police -- attempted to kick in a closed door within the apartment.  According to Conley, his initial kick was met with resistance and was unsuccessful, but a second kick opened the door to a lighted bedroom.  Inside, about four feet from the threshold, a naked

Currier had assumed a shooter's stance and was pointing a revolver directly at him. Conley, who was wearing a bullet-proof vest which prominently displayed his state police badge, ordered Currier to drop his weapon. Currier remained in a shooter's stance and failed to comply. Conley repeated his order. This time, Currier obeyed and was arrested. A subsequent search of the bedroom yielded approximately ten ounces of methamphetamine, $4,225 in cash, a triple beam scale, and the gun, which proved to be a Smith & Wesson .357 magnum loaded with hollow point ammunition.

Currier was indicted for a number of drug trafficking offenses and for using the .357 magnum during and in relation to those offenses. Currier pleaded guilty to drug trafficking but chose to contest the gun charge at a jury-waived trial before Chief Judge Young. During this trial, the government called Sergeant Conley (who testified to the events just described) and two other witnesses, one of whom corroborated that Conley twice told Currier to drop the gun. Currier's trial counsel called no witnesses. Instead, he chose to make his case by cross-examining the government's witnesses. In the course of these cross-examinations, Currier's trial counsel was able to establish that Currier and his girlfriend, Amy St. Amand (who was with Currier in the apartment), were probably asleep when the search began; that the events in question took place in a matter of seconds; and that there was an air conditioner in the bedroom window (although the witness who recalled the air conditioner, Sergeant Conley, could not recall whether the air

conditioner was turned on or noisy). Counsel also introduced into evidence a police report indicating that there had been a break-in at Currier's apartment building nearly three months prior to the search.

During closing arguments, the government's counsel urged the court to adopt the reasoning in United States v. Tolliver, 116 F.3d 120 (5th Cir. 1997), that a conviction under 18 U.S.C. § 924(c)(1) was warranted so long as the court believed that Currier's use of his firearm -- his grabbing the gun and pointing it at Sergeant Conley -- was prompted by a desire to escape or delay arrest. See id. at 124-26 (holding that a defendant's act of reaching for a gun as federal law enforcement agents stormed into his bedroom could constitute a § 924(c)(1) "use . . . in relation to" a drug distribution conspiracy if the jury found that the act was prompted by a desire to prevent arrest and/or to forestall the seizure of instrumentalities of the conspiracy). Currier's trial counsel countered that Tolliver goes too far, that instead the government needed to more directly tie Currier's use of the gun to his trafficking in order for the use to support a § 924(c)(1) conviction, and that record evidence of such a tie was lacking. In making this counter-argument, Currier's trial counsel cited United States v. Alvarez, 814 F. Supp. 908 (D. Idaho 1993), as setting forth a more appropriate approach to the "use . . . in relation to" issue than Tolliver. See 814 F. Supp. at 911 (emphasizing the need for evidence of a connection between the firearm and the underlying drug trafficking offense). Counsel also argued that the trial evidence more reasonably

indicated that Currier had grabbed the gun "to defend himself or his lady friend" from a frightening home invasion than that Currier had grabbed the gun to facilitate his drug trafficking.

At the conclusion of closing arguments, Chief Judge Young sided with the government. Although he had a reasonable doubt that one of Currier's purposes in grabbing his weapon and pointing it at Sergeant Conley "was to get the drugs or the drug paraphernalia or the proceeds out of that apartment," he concluded that the government did not need to make such a showing in order to obtain a conviction. Pointing out that the case was "virtually on all fours with [Tolliver]," the judge found that Currier had used his firearm during and in relation to his drug trafficking simply by "snatching up that weapon to get [him]self out of there." Accordingly, he entered a judgment of conviction under 18 U.S.C. § 924(c)(1). Thereafter, the judge sentenced Currier to sixteen years' imprisonment: eleven years for his drug trafficking convictions and the mandatory five consecutive years for his use of a firearm during and in relation to the conduct underlying those convictions. See 18 U.S.C. § 924(c)(1).

On direct appeal, Currier contended that, despite Chief Judge Young's decision to convict, the judge's remarks at the conclusion of the bench trial evinced agreement with the proposition that Currier had used the gun in self-defense and not to facilitate his drug trafficking. See 151 F.3d at 41. The panel that heard the direct appeal rejected the premise of this argument and affirmed Currier's conviction. See id. at

-5-

41-42. In doing so, the panel endorsed the soundness of the judge's reasoning and, by extension, the reasoning in Tolliver. See id. at 42 ("The district court concluded that Currier grabbed the gun with the intention of escaping or forestalling his arrest, and, however short-lived that notion, his conviction under 18 U.S.C. § 924(c)(1) was proper."). The Supreme Court thereafter denied Currier's petition for a writ of certiorari, see 525 U.S. 1056 (1998), which sought to have the Court decide whether "a defendant [can] be found guilty of a violation of 18 U.S.C. § 924(c)(1) if at the time a weapon is brandished there is absent any thought or consideration of the underlying offense."

On December 13, 1999, Currier moved to vacate and correct his sentence under 28 U.S.C. § 2255. In the motion, which was referred to Judge Harrington instead of Chief Judge Young, Currier asserted that he had been victimized by ineffective assistance of counsel during the bench trial. Currier presented five grounds in support of his ineffective assistance claim. Three of the five grounds were based on the underlying legal premise that self-defense can be an affirmative justification defense to a 18 U.S.C. § 924(c)(1) charge. The three arguments arising from this premise were that (1) trial counsel unreasonably failed to prepare and present an affirmative case of self-defense, (2) trial counsel unreasonably failed to advise the trial judge that self-defense was a viable affirmative defense and/or that it was being relied upon, and (3) trial counsel falsely represented to the appeals court that he had presented an affirmative claim of self-defense

on which the trial judge made favorable findings.  The other two grounds for asserting ineffective assistance, while closely linked to the other three, were conceptually separate: (4) trial counsel unreasonably failed to seek or obtain Currier's informed consent to waiving his right to testify (and thereby to present his affirmative self-defense claim) at the trial, and (5) trial counsel unreasonably failed to distinguish or otherwise deal with <u>Tolliver</u>.

The district court ordered the government to respond to Currier's motion and held an evidentiary hearing at which Currier, Currier's new girlfriend, and Currier's trial counsel testified. Subsequently, the court issued a memorandum and order concluding that Currier's trial counsel's failure to investigate, prepare, or present an affirmative claim of self-defense was outside the wide range of professionally competent assistance and prejudicial. <u>See</u> <u>Currier</u> v. <u>United States</u>, 160 F. Supp. 2d 159, 161-66 (D. Mass. 2001) (applying the two-part test for evaluating ineffective assistance of counsel claims established in <u>Strickland</u> v. <u>Washington</u>, 466 U.S. 668, 688-94 (1984)). Central to this ruling were subsidiary determinations that Currier's trial counsel was prejudicially ineffective in failing to distinguish <u>Tolliver</u>, to prepare Currier and St. Amand to testify, and to put them on the witness stand. <u>See</u> <u>id.</u> As a remedy, the court granted Currier's motion and vacated his firearms conviction. <u>See</u> <u>id.</u> at 166. The court also reduced Currier's sentence from sixteen years to eleven. <u>See</u> <u>id.</u>

**II.**

The government presents two primary arguments on appeal. First, it contends that the district court erred, both legally and factually, when it found that Currier's trial counsel's performance fell outside the range of professionally competent assistance and prejudiced Currier within the meaning of <u>Strickland</u>. Within this umbrella argument, the government advances a number of supporting arguments, one of which was not explicitly made below and surfaces for the first time in the government's appellate brief: that, at least under the facts of this case, self-defense was not available as an affirmative justification defense to the § 924(c)(1) charge in the same way it can be to, say, a homicide or assault charge. Ultimately, we agree with the government that Currier has not succeeded in establishing <u>Strickland</u> prejudice.

Second, the government asserts that, even if the court correctly concluded that Currier's trial counsel was ineffective, it erred in reducing Currier's sentence rather than scheduling the case for further proceedings. In view of our holding on the <u>Strickland</u> prejudice issue, we do not reach this second argument.

This case has been made somewhat more complicated by Currier's apparent success below (abetted by the government's initial silence on the issue)[1] in framing the debate in terms of whether

---

[1]Currier contends that this initial silence constitutes a forfeiture and precludes our review of the matter. We disagree. The government argued below that Currier's trial counsel's handling of the

Currier's trial counsel committed prejudicial constitutional error by failing to present his self-defense theory as an affirmative justification defense -- with all that establishing such a defense might entail. Cf. United States v. Gant, 691 F.2d 1159, 1162-63 (5th Cir. 1982) (holding that an affirmative justification defense of self-defense in the context of a felon-in-possession charge requires the defendant to show that (1) he faced an imminent threat of death or serious bodily injury, (2) he did not recklessly or negligently place himself in a situation where he would be forced to choose the criminal conduct, (3) he had no reasonable legal alternative to violating the law, and (4) there was a direct causal relationship between the conduct in question and avoidance of the imminent threat). We do not have occasion in this case to say that a charge under 18 U.S.C. § 924(c)(1) is never susceptible to an affirmative justification defense such as self-defense. Cf. United States v. Willis, 38 F.3d 170, 173-74 (5th Cir. 1994) (acknowledging the possibility that duress may be raised as an affirmative defense to a charge under § 924(c)(1)). Nevertheless, this is not a case where the assertion of such a defense would have been appropriate.

A self-defense claim of the sort animating Currier's ineffective assistance argument is a necessity defense which, "like other justification defenses, allows a defendant to escape

_____

self-defense issue was not prejudicially ineffective. Under our case law, the government may now advance an additional reason why this is so. See United States v. DiPina, 178 F.3d 68, 72 n.7 (1st Cir. 1999).

responsibility despite proof that his actions encompassed all of the elements of a criminal offense." United States v. Maxwell, 254 F.3d 21, 26 (1st Cir. 2001). Thus, to endorse Currier's position, we would have to find that Currier's trial counsel was prejudicially ineffective in failing to argue that, if Currier had indeed used his gun "during and in relation to" his drug trafficking, he did so justifiably. While, at least in theory, there may be situations in which a person justifiably (as that term is understood in the context of justification defenses) uses a gun to facilitate a drug trafficking offense, we are confident that, if they exist at all, such situations are few and far between. So too are we confident that Chief Judge Young could not supportably have found, on the facts of this case, that Currier used his gun to facilitate his drug trafficking yet did so justifiably. Currier has thus suffered no Strickland prejudice as a result of trial counsel's not advancing an affirmative justification defense but instead presenting the more modest "self-defense" argument that he actually made.[2]

---

[2]We reject Currier's assertions that trial counsel made no self-defense argument and/or failed to generate evidence tending to support the argument. As set forth above, Currier's trial counsel argued that the government had failed to prove a statutory violation in the first place because, on one reasonable view of the evidence, Currier's use of the gun was to defend himself (and St. Amand) and accordingly could not have facilitated his drug trafficking offenses. See pages 4-5, above. This is the "self-defense" argument to which the panel made reference in Currier's direct appeal. See 151 F.3d at 41 ("If, indeed, Currier was using his gun only for self-defense, and had formed no intent to evade or escape arrest, or to facilitate his drug trafficking in any other way, then his conviction under § 924(c)(1) might well be improper."). Counsel also was able to elicit, through cross-examination of government witnesses, that the raid took place in a matter of seconds and at a time and in circumstances that were likely to leave Currier

We evaluate the remaining elements of Currier's ineffective assistance claim through the prism of Strickland's prejudice requirement as well. We thus ask whether Chief Judge Young's linchpin finding that Currier "used" his firearm (within the meaning of Tolliver) because at some point prior to dropping the gun he knew that those invading his home were law enforcement agents, might have been different had counsel presented at trial the evidence generated and arguments made during the 28 U.S.C. § 2255 proceedings.[3] See Strickland, 466 U.S. at 694 (explaining that trial counsel's errors are not prejudicial unless a different outcome is sufficiently probable that the habeas court lacks confidence in the trial's outcome). We see no reasonable probability that counsel's assumed missteps had any effect on this crucial finding.

The alleged errors by trial counsel include failing to prepare sufficiently a self-defense argument, to evaluate whether Currier and St. Amand should take the stand, to discuss with Currier his entitlement to take the stand, and to distinguish or otherwise deal with Tolliver. The last of these elements is a non-starter because the prior panel approved the reasoning of Tolliver and because the case is materially indistinguishable if Currier knew as he brandished his weapon that the persons entering the apartment were police officers. See 116

---

uncertain as to who was invading his home. See pages 3-4, above.

[3]"The district court concluded that Currier grabbed the gun with the intention of escaping or forestalling arrest, and, however short-lived that notion, his conviction under 18 U.S.C. § 924(c)(1) was proper." Currier, 151 F.3d at 42.

-11-

F.3d at 124-26 (holding that a drug trafficking conspirator's use of a gun to prevent arrest would be "in relation to" the conspiracy). We have already determined that trial counsel's failure to present a self-defense argument did not prejudice Currier. We now turn to the other two elements of Currier's claim and ask whether either of these alleged lapses caused counsel to fail to generate evidence that might have affected the judge's finding about Currier's knowledge.

Currier suggests that the outcome of his trial might have been different had he testified and told Chief Judge Young about reasons for his gun possession and use that were unrelated to his drug trafficking: that St. Amand was a stripper and thus a prime stalking target, and that Currier worked as a security guard for an escort service and for a friend in the restaurant business. Currier also complains that his failure to testify (and to call St. Amand as a corroborating witness) deprived the judge of important information about the state of affairs in the apartment bedroom during the raid: namely, that the bedroom's darkness, the brightness of the officers' flashlights, and the noise made by the rickety old bedroom air conditioner all kept him from realizing that those coming through the door were law enforcement officials until the point at which he dropped the gun.

If credited (a big if), the testimony about Currier's other reasons for owning a gun might have been helpful on whether, in general, Currier used his gun in connection with his drug trafficking. But the

testimony has very little probative value on whether, as a factual matter, Currier came to understand prior to dropping the gun that the persons breaking into the apartment were law enforcement officials -- the basis on which Chief Judge Young convicted Currier and the premise upon which that conviction was affirmed. Moreover, Currier's and St. Amand's self-serving testimony about the state of affairs in the bedroom during the raid, while perhaps not entirely consistent with[4] and cumulative of[5] the evidence trial counsel was able to elicit on cross-examination, would have added little to the body of evidence that was before the judge during the bench trial. In the end, having read the record with care, we find it highly improbable that the judge's finding about the state of Currier's knowledge during the raid would have been affected by the additional evidence Currier developed and the arguments Currier made on collateral review.

---

[4]Most prominently, as set forth above, Sergeant Conley testified that the overhead lights were on in the bedroom when he kicked in the door; Currier did not directly contradict this but testified (at the hearing on his 28 U.S.C. § 2255 motion) that, after he opened the bedroom door (contra to Conley's testimony that Conley kicked the door in), "all [he] could see was lights, real bright lights flashing in [his] eyes because it was pitch black out there, too, and [he] couldn't see anything." Currier also submitted a sworn statement that, when the raid began, he "was in a dark bedroom with all the lights out," and that, after he had pulled open the door, "[he] could not see anybody because it was still dark out and the flashlights were being shined in [his] eyes."

[5]For example, Currier testified that he didn't hear the officers' shouts because the bedroom had a "rickety old air conditioner" that was "kind of loud"; Sergeant Conley confirmed that there was an air conditioner in the window but, as we have stated, could not recall whether it was turned on or, for that matter, noisy.

## Conclusion

For the reasons set forth above, we **reverse** the order awarding Currier collateral relief and **remand** with instructions that Currier's conviction and sentence under 18 U.S.C. § 924(c)(1) be reinstated.