# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

No. 16-20081
Summary Calendar

United States Court of Appeals
Fifth Circuit

**FILED**

May 16, 2018

Lyle W. Cayce
Clerk

UNITED STATES OF AMERICA,

     Plaintiff - Appellee

v.

JESUS LEONARDO MONTALVO DAVILA, also known as Jesus Montalvo, also known as Jesus L. Montalvo,

     Defendant - Appellant

Appeal from the United States District Court
for the Southern District of Texas

Before BARKSDALE, GRAVES, and COSTA, Circuit Judges.

JAMES E. GRAVES, JR., Circuit Judge:

Defendant-Appellant Jesus Montalvo Davila moves to recall the mandate and for leave to file an out-of-time petition for panel rehearing in light of *United States v. Herrold*, 883 F.3d 517 (5th Cir. 2018) (en banc). In addition, the Federal Public Defender moves to be reappointed as Montalvo's counsel on appeal. We grant the motions.

## I

In 2015, Montalvo pleaded guilty to reentering the United States in violation of 8 U.S.C. § 1326(a) and (b)(2). The presentence report recommended applying a 16-level "crime of violence" enhancement pursuant to

No. 16-20081

§ 2L1.2(b)(1)(A)(ii) of the 2015 Sentencing Guidelines based on Montalvo's prior conviction for burglary of a habitation under Texas Penal Code § 30.02(a). Montalvo objected, arguing that his prior conviction did not qualify for that enhancement because Texas Penal Code § 30.02(a) is an "indivisible" statute and is categorically broader than generic "burglary of a dwelling," the pertinent "crime of violence" enumerated in the 2015 Guidelines. *See* U.S.S.G. § 2L1.2 cmt. n.1(B)(iii) (2015). The district court overruled the objection. With the enhancement, Montalvo faced a Guidelines range of 57 to 71 months in prison. The district court granted Montalvo's request for a downward variance and sentenced him to 47 months in prison. Had the enhancement not been applied, Montalvo maintains he would have faced a Guidelines range of 24 to 30 months in prison.

Montalvo appealed, challenging his sentence on the same grounds as in the district court. He argued that the Supreme Court's intervening decision in *Mathis v. United States*, 136 S. Ct. 2243 (2016), supported finding the Texas burglary statute to be indivisible, but a panel of this court soon rejected that contention in *United States v. Uribe*, 838 F.3d 667, 670–71 (5th Cir. 2016). Because *Uribe* foreclosed Montalvo's indivisibility argument, we affirmed his sentence. *United States v. Montalvo Davila*, 688 F. App'x 285 (5th Cir. 2017). Judgment was entered on May 1, 2017. On May 4, 2017, the court granted the Federal Public Defender's motion to withdraw as Montalvo's counsel. The mandate issued on May 23, 2017.

On February 20, 2018, the en banc court issued its decision in *Herrold*, holding that the Texas burglary statute is indivisible and overruling *Uribe*. *Herrold*, 883 F.3d at 529 ("In light of Texas case law, we hold that Texas Penal Code §§ 30.02(a)(1) and (a)(3) are not distinct offenses, but are rather separate means of committing one burglary offense. To the extent that it is inconsistent

2

No. 16-20081

with this holding, we also overrule our earlier decision in *United States v. Uribe*."). The mandate in *Herrold* issued on February 28, 2018.

On March 2, 2018, Montalvo filed his motion to recall the mandate and for leave to file an out-of-time petition for panel rehearing. The Federal Public Defender thereafter moved to be reappointed as Montalvo's counsel.

## II

This court has the "inherent power to recall [its] mandates." *Calderon v. Thompson*, 523 U.S. 538, 549 (1998); *United States v. Emeary*, 794 F.3d 526, 527–28 (5th Cir. 2015) (Dennis, J., in chambers). "Our authority to recall our own mandate is clear," *United States v. Tolliver*, 116 F.3d 120, 123 (5th Cir. 1997), but it is not unbounded. Fifth Circuit Rule 41.2 provides that "[o]nce issued a mandate will not be recalled except to prevent injustice." This rule reflects the general precept that recalling the mandate is appropriate "only in extraordinary circumstances." *Calderon*, 523 U.S. at 550.

When faced with a motion to recall its mandate, this court must balance two opposing interests: the interest in "prevent[ing] injustice" in the case at hand, 5TH CIR. R. 41.2, and the interest in maintaining the finality of the judgment already rendered in the case. Assessing the relative weights of these competing considerations and determining whether the overall balance warrants recalling the mandate lies within the court's sound discretion. *Am. Iron & Steel Inst. v. EPA*, 560 F.2d 589, 594–95 (3d Cir. 1977) ("Above all, . . . recall of a mandate is a mode of relief that falls within the ambit of a court's discretion[,] . . . [a]nd decisions concerning the propriety of such relief must be rendered on a case-by-case basis."). Exercise of that discretion is subject to certain parameters, however. In particular, a proper exercise of discretion requires that the court give due regard to relevant precedent. *In re Volkswagen of Am., Inc.*, 545 F.3d 304, 310 & n.4 (5th Cir. 2008) (en banc) ("[A] court must exercise its discretion within the bounds set by . . . relevant, binding

3

No. 16-20081

precedents."); *see also United States v. Escalante-Reyes*, 689 F.3d 415, 425–26 (5th Cir. 2012) (en banc) (explaining that the en banc court's decision to exercise its discretion under the fourth prong of plain-error review was consistent with precedent). Prior caselaw can be relevant to a decision to recall the mandate in two respects. First, it can assist in identifying appropriate factors to weigh against the countervailing interest in finality. Second, since any decision to recall the mandate (or not) reflects a particular instance of a court having balanced the competing interests, a prior decision may direct the same court toward a specific result in a later case. How strongly a given precedent guides a court's discretion in a later case largely depends on the factors present in each case and the relative weight assigned to those factors.[1] Within the metes and bounds set by relevant precedent, however, courts retain ample room to make the case-specific judgment calls that inhere in discretionary rulings of this sort.

### III

Relying primarily on this court's precedent in *Tolliver*, Montalvo argues that recalling the mandate in this case is appropriate because: (1) *Herrold* has rendered our previous decision affirming his sentence "demonstrably wrong," and (2) failure to recall the mandate would produce an unwarranted disparity between him and similarly situated defendants in other cases. We agree that

---

[1] For example, suppose a court recalled the mandate in Case A based on three factors. Due regard for precedent would militate in favor of the court exercising its discretion to recall the mandate in a later case, Case B, provided that: (1) the same three factors are present in Case B, (2) each of the three factors weighs in favor of recalling the mandate in Case B at least as strongly as the same factor weighed in favor of doing so in Case A, and (3) the finality interest in Case B is no stronger than it was in Case A. If additional factors favoring recall are present in Case B but were absent in Case A, recalling the mandate in Case B becomes an even more compelling prospect. On the other hand, if condition (1), (2), or (3) is not met, and if Case A does not provide other guidance, then Case A will exert less of a constraining force on the outcome in Case B.

No. 16-20081

both of these factors favor recall and find that a third consideration—Montalvo's demonstrated diligence in asserting his claim—does as well.

## A

Courts exist not merely to decide cases, but to decide them correctly. *See W. Virginia Oil & Gas Co. v. George E. Breece Lumber Co.*, 213 F.2d 702, 704 (5th Cir. 1954) (recognizing "two principles of judicial administration founded on sound public policy, namely, that litigation must finally and definitely terminate within a reasonable time and that justice must be done unto the parties"). The public interest in correcting an erroneous conviction or sentence "may counsel a more generous recall rule in criminal cases" than in other contexts. 16 CHARLES ALAN WRIGHT, ARTHUR R. MILLER, & EDWARD H. COOPER, FEDERAL PRACTICE AND PROCEDURE § 3938, p. 880 (3d ed. 2012) (hereinafter, "WRIGHT & MILLER").

Thus, we have recognized that recalling the mandate is appropriate when a subsequent decision of the Supreme Court or this court renders a previous decision "demonstrably wrong." *Tolliver*, 116 F.3d at 123; *United States v. Fraga-Araigo*, 281 F.3d 1278, 2001 WL 1692406, at *1 (5th Cir. 2001) (unpublished decision).[2] A previous decision is "demonstrably wrong" if it "directly conflicts with" the subsequent decision. *Tolliver*, 116 F.3d at 123; *see also Sargent v. Columbia Forest Prods., Inc.*, 75 F.3d 86, 90 (2d Cir. 1996) ("One circumstance that may justify recall of a mandate is '[a] supervening change in governing law that calls into serious question the correctness of the court's judgment.'" (quoting *McGeshick v. Choucair*, 72 F.3d 62, 63 (7th Cir. 1995))).

In *Tolliver*, this court recalled its mandate after the Supreme Court "clearly overrule[d] [the] precedent upon which [this court] had relied to

---

[2] For purposes of recalling the mandate, we perceive no basis for distinguishing between subsequent decisions of the Supreme Court and subsequent decisions of this court.

5

affirm" a defendant's convictions. 116 F.3d at 124. The same circumstance is present here and favors recalling the mandate at least as strongly as it did in *Tolliver*. *Herrold* is a "subsequent decision" that "directly conflicts with" our previous decision affirming Montalvo's sentence. *Herrold* holds that the Texas burglary statute is broader than generic burglary, meaning that Montalvo's prior conviction under that statute does not qualify for the 16-level "crime of violence" enhancement he received. *See Herrold*, 883 F.3d at 529. Had *Herrold* been decided at the time we issued our previous decision, we would not have followed *Uribe*'s contrary holding and would not have affirmed Montalvo's sentence. The interest in correcting our decision, now that *Herrold* has rendered it "demonstrably wrong," weighs heavily in favor of recalling the mandate in this case.[3]

**B**

"Recalling the mandate is also appropriate 'where there is a danger of incongruent results in cases pending at the same time.'" *Tolliver*, 116 F.3d at 123 (quoting *Am. Iron & Steel Inst.*, 560 F.2d at 594); *accord Greater Boston Television Corp. v. FCC*, 463 F.2d 268, 278–79 (D.C. Cir. 1971); *see also* 16 WRIGHT & MILLER § 3938, p. 880 (citing "the desire to achieve like treatment of defendants in like situations" as a factor favoring recalling the mandate in criminal cases). In *Tolliver*, the court granted a defendant's motion to recall the mandate after the Supreme Court vacated his co-defendants' convictions

---

[3] The Government asserts that we should not recall the mandate because Montalvo could seek relief from his sentence by filing a motion under 28 U.S.C. § 2255. We are not persuaded, as it is far from clear that § 2255 would offer relief for Montalvo's claim. *See United States v. Placente*, 81 F.3d 555, 558 (5th Cir. 1996). We also reject the Government's contention that recalling the mandate would not be "prudent" because the Solicitor General has petitioned the Supreme Court for a writ of certiorari in *Herrold*. The en banc court's decision in *Herrold* is, and remains, binding precedent in this circuit "until the Supreme Court provides contrary guidance." *Neville v. Johnson*, 440 F.3d 221, 223 (5th Cir. 2006) (citation and internal quotation marks omitted).

No. 16-20081

under the same statute. 116 F.3d at 123–24. Combined with the previous factor, the court found that the potential incongruity made recall "appropriate and in the interest of justice." *Id.* (relying on *Gradsky v. United States*, 376 F.2d 993, 995 (5th Cir. 1967)).

Failure to recall the mandate in the present case would create an unwarranted sentencing disparity between Montalvo and similarly situated defendants in cases where the mandate has not yet issued.[4] Although these individuals are not Montalvo's co-defendants, the resultant disparity would undermine a central purpose of the Sentencing Guidelines, *see Tapia v. United States*, 564 U.S. 319, 324–25 (2011) (noting that a central concern with the system that preceded the Sentencing Guidelines was that it produced significant sentencing disparities among similarly situated defendants); *Mistretta v. United States*, 488 U.S. 361, 365, 368 (1989), and the categorical approach, *see Taylor v. United States*, 495 U.S. 575, 590, 600–01 (1990). The interest in avoiding such a discrepancy counsels in favor of recalling the mandate at least as strongly as the "danger of incongruent results" did in *Tolliver*. This factor weighs significantly in favor of granting Montalvo's motion.

## C

There are no *per se* time limits or any precise procedural hurdles that a movant must satisfy for a court to recall its mandate. *See Emeary*, 794 F.3d at 529 (recalling mandate more than five years after it issued); *Tolliver*, 116 F.3d at 123–24 (recalling mandate even though movant did not petition Supreme Court for a writ of certiorari). Nonetheless, whether a movant has diligently

---

[4] By "similarly situated defendants," we mean defendants in other, unrelated criminal cases who received sentence enhancements due to the same prior conviction as Montalvo and whose appeals challenging those sentences were pending in this court during the same timeframe as Montalvo's appeal.

pursued his claim or otherwise demonstrated a "true interest" in obtaining his desired relief can be a relevant consideration. *See Fraga-Araigo*, 2001 WL 1692406, at *2 ("[T]he apparent lack of true interest on the part of the movant would tend to show that injustice has not been done.").

The Government faults Montalvo for not filing a petition for rehearing en banc or a petition for a writ of certiorari. However, Montalvo objected to his sentence enhancement in the district court, not just on appeal. That shows sufficient diligence on his part. The court in *Tolliver* did not rely on this consideration, but it weighs substantially in favor of recalling the mandate in this case.

## D

Turning to the overall balance of interests in this matter, we conclude that the finality interest is readily outweighed by the factors on the other side of the scale. We recognize that "[f]inality is essential to both the retributive and the deterrent functions of criminal law." *Calderon*, 523 U.S. at 555. Requiring Montalvo to serve an extended prison term due to an erroneous sentence, however, does not serve those purposes. *See* 18 U.S.C. § 3553(a) (instructing courts to "impose a sentence sufficient, but not greater than necessary" to accomplish the sentencing purposes set forth in § 3553(a)(2), which include retribution and deterrence). The finality interest here is therefore no greater than in other cases, including *Tolliver*.[5]

---

[5] Concerns based on federalism and the nature of habeas review, both of which underlay much of the reasoning in *Calderon*, *see* 523 U.S. at 555–57, are not present here. *See Conley v. United States*, 323 F.3d 7, 14 (1st Cir. 2003) (noting that *Calderon* "was explicitly directed at the recall of a mandate in a habeas proceeding in order to revisit the merits of an earlier decision denying habeas corpus relief to a state prisoner," and that considerations are different where a decision involving direct review of "intra-federal proceedings" is at issue (citations, brackets, and internal quotation marks omitted)).

No. 16-20081

Though we would reach the same result even without the benefit of precedent, *Tolliver* is particularly useful in guiding our exercise of discretion. The same two factors that led this court to recall its mandate in *Tolliver* are present in this case and support the same result here at least as much as they did there. *See* 116 F.3d at 123–24. Furthermore, the court in *Tolliver* did not consider the movant's diligence; here, that factor favors granting Montalvo's motion. In sum, the present case provides even more convincing grounds for recalling the mandate than *Tolliver*. In a different case involving different considerations, a different result could very well obtain. But here, recalling the mandate is necessary "to prevent injustice." We exercise our discretion to do so.

## IV

Accordingly, IT IS ORDERED that the court's May 4, 2017 order granting the Federal Public Defender's motion to withdraw as counsel is VACATED, and the Federal Public Defender's motion for reappointment as counsel is GRANTED.

IT IS FURTHER ORDERED that Montalvo's motion to recall the mandate and for leave to file a petition for panel rehearing out of time is GRANTED.

9

No. 16-20081

RHESA HAWKINS BARKSDALE, Circuit Judge, dissenting from granting the motion to recall the mandate and the two related motions:

The motion to recall the mandate should be denied because this case falls far short of presenting the "grave, unforeseen contingenc[y]" required by precedent. *Calderon v. Thompson*, 523 U.S. 538, 550 (1998). More particularly, the majority's interpretation of the "incongruent results" basis for recall from our court's *Tolliver* opinion is overly broad, *United States v. Tolliver*, 116 F.3d 120, 123 (5th Cir. 1997); and, that overstatement skews the controlling discretionary standard, *Thompson*, 523 U.S. at 549. As discussed *infra*, the majority's interpreting *Tolliver*'s incongruent-results recall-basis to benefit a wide range of those sentenced under the same advisory Guideline, *see* Order at n.4, opens the door to requiring recall of the mandate any time the Supreme Court or our *en-banc* court changes the law.

In addition, our local rule's permitting recalling a mandate *only* "to prevent injustice" requires our considering other relevant factors, some of which the majority does not discuss. Those factors include, *inter alia*: *Herrold* overturned established precedent in a narrow 8–7 decision; and, under that earlier precedent, *Davila* was correct when decided. 5th Cir. R. 41.2; *United States v. Herrold*, 883 F.3d 517, 541–42 (5th Cir. 2018) (en banc).

I.

An analysis of *Tolliver* shows the instant case contains no "grave, unforeseen contingenc[y]". *Thompson*, 523 U.S. at 550. The two rationales for recalling the mandate in *Tolliver* combined to create the "extraordinary circumstances" required to do so; they were not alternatives, each sufficient for that purpose. *Id.*; *see generally Tolliver*, 116 F.3d 120.

As the majority in this instance notes, our court recalled the mandate in *Tolliver* because "a subsequent decision of the Supreme Court or this court render[ed] a previous decision 'demonstrably wrong'", and "there [was] a

10

danger of incongruent results in cases *pending at the same time*".  Order at 5–7 (citing *Tolliver*, 116 F.3d at 123) (emphasis added).  That both of these factual predicates were present in *Tolliver* is important for properly applying the factually-intensive discretionary standard for recall.

The facts in *Tolliver* are instructive: Eight defendants were convicted of drug offenses, with six of those eight also convicted of firearms offenses, all "arising from a narcotics conspiracy and gang war in New Orleans".  116 F.3d at 122.  After our court affirmed the firearms convictions for the six defendants under the "use" prong of 18 U.S.C. § 924(c)(1), *United States v. Tolliver*, 61 F.3d 1189, 1218 (5th Cir. 1995), two of those six co-conspirators (Sterling and Moore) sought Supreme Court review.  *Tolliver*, 116 F.3d at 123.

The Court granted *certiorari*, vacated, and remanded in the light of its recent decision in *Bailey v. United States*, 516 U.S. 137 (1995).  *Moore v. United States*, 519 U.S. 802 (1996).  On remand, this court in *Tolliver* held *Bailey* "render[ed]" our court's prior decision "demonstrably wrong" because *Bailey* held "the mere possession of firearms for the protection of or to embolden an offender is not enough to constitute 'use' under § 924(c)(1)".  *Tolliver*, 116 F.3d at 124.

Prior to that decision on remand, Mets, another of the six co-conspirators convicted of firearms offenses, moved to recall the mandate, in order to permit our court's considering his case with Sterling and Moore's on remand in the light of *Bailey*.  *Id*. at 123.  Our court granted Mets recall-relief, in order not to create an "incongruent result" between Mets and his co-conspirators, Sterling and Moore, but refused to grant recall-relief to the three other defendants convicted of the firearms offenses because they did not file a timely *certiorari* petition or a motion to recall the mandate.  *Id*. at 124.

That *Tolliver* involved co-conspirators *and* a change in the law is important because, as stated by the source on which the Court relied in

No. 16-20081

*Thompson*, and the majority relies in its order, "it is difficult to justify recall of a mandate, destroying finality and repose, simply on the ground that the court of appeals reached a wrong decision". 16 Charles Alan Wright *et al.*, Federal Practice and Procedure § 3938 (3d ed. 2012) (cited by *Thompson*, 523 U.S. at 550; and Order at 5–6). Similarly, decisions from other circuits reflect that, under the controlling discretionary standard, a change in the law is generally insufficient, alone, to justify recalling the mandate. *E.g.*, *Marino v. Ortiz*, 888 F.2d 12, 14 (2d Cir. 1989) (denying relief where "[t]he motion . . . is nothing but an attempt to reopen a final judgment because of a subsequent change in the law"); *United States v. Tulare Lake Canal Co.*, 677 F.2d 713, 715 (9th Cir. 1982) ("A change in controlling authority or a conviction that the court erred are ordinarily not alone sufficient grounds for recall of a mandate after final judgment."); *In re Union Nacional de Trabajadores*, 527 F.2d 602, 604 (1st Cir. 1975) (recalling the mandate where "our original decision was demonstrably wrong *and* created manifest injustice" (emphasis added)); *Powers v. Bethlehem Steel Corp.*, 483 F.2d 963, 964 (1st Cir. 1973) ("Alleged erroneous rulings of law are generally not held to be sufficiently unconscionable to justify reopening a judgment not void when issued.") (quoted by *Sargent v. Columbia Forest Prods., Inc.*, 75 F.3d 86, 90 (2d Cir. 1996) (recalling the mandate based on a "variety of factors", not merely because there was a change in the law)); *Greater Boston Television Corp. v. F.C.C.*, 463 F.2d 268, 277 & n.12 (D.C. Cir. 1971) ("[T]he power to recall mandates should be exercised sparingly and is not to be availed of freely as a basis for granting rehearings out of time for the purpose of changing decisions even assuming the court becomes doubtful of the wisdom of the decision that has been entered and become final." (internal quotation omitted)).

The wisdom of these decisions is self-evident. Obviously, the mandate cannot be recalled in every case where there is a change in the law, absent

some other "extraordinary circumstance[]".  *Thompson*, 523 U.S. at 550.  "The sparing use of the power [to recall the mandate] demonstrates it is one of last resort, to be held in reserve against grave, unforeseen contingencies."  *Id.*

Were our discretionary recall-power to be applied liberally, all losing parties in any appeal, criminal or civil, would move to recall the mandate every time the Supreme Court or our court *en banc* changed the law.  In the criminal context, recalling the mandate any time there is a change in the law would conflict with criminal law's "paramount" interest in finality and the general rule that changes in criminal law do not apply retroactively.  *Id.* at 557; *see* 28 U.S.C. § 2255; *Teague v. Lane*, 489 U.S. 288, 307 (1989)  (The "general rule [is] nonretroactivity for [criminal] cases on collateral review"); *e.g.*, *In re Jackson*, 776 F.3d 292, 294–96 (5th Cir. 2015) (Supreme Court decision on the meaning of "violent felony" under the Armed Career Criminal Act was not a new rule of constitutional law, and was, therefore, not retroactively applicable to cases on post-conviction relief.).

That a change in the law alone is insufficient to recall the mandate is important, because the majority's interpretation of *Tolliver*'s "danger of incongruent results" basis for recall is overly broad.  The majority purports to limit that basis to "similarly situated defendants", defined broadly as "defendants in other, *unrelated* criminal cases who received sentence enhancements due to the same prior conviction as [Davila] and whose appeals challenging those sentences were pending in this court during the same timeframe as [Davila's] appeal".  Order at n.4 (emphasis added).  Obviously, this interpretation is not only unworkable because it applies the basis broadly to factually unrelated cases, as discussed *infra*, but it is also unworkable because the temporal limitation is no limitation at all.

The limitation, which arbitrarily sets the temporal threshold for recall-relief at cases that "were pending in this court during the same timeframe as

[Davila's]", *id.*, is far too vague for application of this "extraordinary" form of relief, *Thompson*, 523 U.S. at 550, as demonstrated by the key dates in Davila's case. Davila illegally reentered this country in July 2015, after being deported following his felony conviction; he pleaded guilty that November; our panel affirmed his sentence on 1 May 2017; the mandate issued on 23 May; and our court decided *Herrold* on 20 February 2018. The "same timeframe", in this context, could mean any appeal pending between 2015 (perhaps even 2014) and February 2018.

Because the majority applies this recall-basis to all cases "pending" in the same "timeframe", in effect, any defendant sentenced under the 2015 version of the Sentencing Guidelines may be granted relief. Accordingly, this dissent limits discussion of "similarly situated defendants" to mean those in "unrelated criminal cases" who received a 16-level enhancement following a Texas-burglary conviction, pursuant to Texas Penal Code § 30.02(a).

Contrary to the majority's position, "similarly situated defendants" cannot be interpreted so broadly as to include "unrelated criminal cases". *See* Order at n.4. A narrower, more appropriate reading makes plain this is not the "grave, unforeseen contingenc[y]" envisioned by the discretionary standard. *Thompson*, 523 U.S. at 550.

The "incongruent results" basis was narrowly interpreted in *Tolliver*: As stated *supra*, defendants seeking relief in *Tolliver* were co-conspirators, 116 F.3d at 123; for Sterling and Moore's convictions, the Court granted *certiorari*, vacated, and remanded, *id*; and our court recalled co-conspirator Mets' mandate so he would not be treated differently than Sterling and Moore, *id.* at 124.

Obviously, *Tolliver* is distinguishable. The majority's order finds a danger of "incongruent results" even though Davila's case is not factually connected to Herrold's. Their only connection is that they were both convicted

of burglary and our *en banc* court changed the law. Any sentencing discrepancies here are not the type of "incongruent results" with which *Tolliver* was concerned.

Interpreting the incongruent-results recall-basis so broadly as to include "similarly situated defendants" in "unrelated criminal cases", as the majority's order does, allows this court to recall the mandate every time there is a change in the law; but, that is contrary to Supreme Court precedent. Under such a rule, any criminal defendant who is convicted under the same statute or sentenced under the same advisory Guideline may be granted a new trial or resentencing. Take *Tolliver*, for example: Our court granted recall-relief only to the co-conspirator who had filed a timely motion to recall, requiring a stronger factual connection than being convicted under the same statute. *Id.*

The narrow scope of *Tolliver*'s incongruent-results basis for recall is important because, as discussed *supra*, under the controlling discretionary standard, that there was a change in the governing law should not be sufficient in every case to recall the mandate. "[T]he profound interests in repose" cannot tolerate a recall of the mandate for every "similarly situated defendant" every time there is a change in the governing law. *Thompson*, 523 U.S. at 550.

## II.

Again, this court may recall the mandate *only* "to prevent injustice". 5th Cir. R. 41.2. As the majority states correctly at 3–4, in determining whether failure to recall the mandate would produce "injustice", the court must consider all relevant factors. *E.g.*, *Sargent*, 75 F.3d at 90. "Injustice" is synonymous with "unfairness", and we should consider all relevant factors to determine what is just and fair on the facts of this case. *Injustice*, Merriam-Webster, merriam-webster.com/dictionary/injustice (last visited 10 May 2018).

The majority's order fails to consider relevant factors weighing against granting relief. More particularly, the order does not discuss that, *inter alia*:

*Herrold* overruled *United States v. Uribe*, 838 F.3d 667 (5th Cir. 2016), in a very narrow 8–7 decision, with a lengthy and well-reasoned dissent; *Davila* was correct when decided; and, as the dissent in *Herrold* recognizes, "[t]he effect of" *Herrold*'s ruling Texas Penal Code § 30.02(a) convictions do not constitute generic burglary "is to render all burglary convictions in the second-most populous state in the country nullities as far as the [Armed Career Criminal Act] is concerned". *Herrold*, 883 F.3d at 542 (Haynes, J., dissenting). In addition, the interests of finality and the circumstances of Davila's case weigh against granting his three motions.

A.

The first factor weighing against granting Davila recall-relief is that our panel opinion in *Davila* does not fit neatly into the definition of "demonstrably wrong". *Tolliver*, 116 F.3d at 123. The root of "demonstrably"— "demonstrate"—means "to show clearly", or "to prove or make clear by reasoning or evidence". *Demonstrate*, Merriam-Webster, merriam-webster.com/dictionary/demonstrate (last visited 10 May 2018). Although the majority opinion in *Herrold* is undoubtedly now the law of this circuit, pending resolution of the Government's *certiorari* petition, the 8–7 decision in *Herrold* shows it was anything but "clear" that our court's prior interpretation was "wrong". *Tolliver*, 116 F.3d at 123. If anything, our prior precedent was "wrong" simply because eight of 15 judges thought it wrong. *See Payne v. Tennessee*, 501 U.S. 808, 845 (1991) (Marshall, J., dissenting) (criticizing the 5–4 majority for "discard[ing]" precedent on the basis that "five or more Justices *now* disagree") (emphasis in original).

As then-Judge Cardozo recognized in discussing a divided New York court, "[t]he closeness of the division attests the measure of the doubt". *People ex rel. Hayes v. McLaughlin*, 160 N.E. 357, 358 (N.Y. 1928). In then-Judge Cardozo's words, the seven judges' dissenting in *Herrold* demonstrates, at the

very least, a high "measure of doubt" regarding the "demonstrabl[e] wrong[ness]" of this court's pre-*Herrold* jurisprudence. *Id.*; *see Tolliver*, 116 F.3d at 123. Along that line, the strong dissent in *Herrold* shows the issue was subject to reasonable dispute. *See Puckett v. United States*, 556 U.S. 129, 135 (2009) (for plain-error review, contrasting error that is "clear or obvious" to error "subject to reasonable dispute"; only the former constitutes plain error).

That seven of our judges would have upheld *Herrold*'s sentence mitigates, to some extent, the requisite "injustice" to Davila based on our court's changing the law in favor of criminal defendants after Davila's right to have his sentence reviewed was exhausted. Indeed, had the then two new members of our court participated in the *en banc* decision, the *en-banc* court very well could have reached a different rule. *Herrold*, 883 F.3d at n.\*. And, the Government has filed a *certiorari* petition in the Supreme Court. *United States v. Herrold*, 17-1445 (filed 19 Apr. 2018). In short, *Davila* was not so objectively, obviously wrong as to obligate our recalling the mandate, even if that were our only consideration.

B.

In that regard, another factor weighing against granting recall-relief is that *Davila* was correct when decided under this court's precedent and mandatory rule of orderliness. *United States v. Conde-Castaneda*, 753 F.3d 172, 175–77 (5th Cir. 2014) (holding Texas Penal Code § 30.02(a) was divisible and convictions under § 30.02(a)(1) qualified as generic burglary); *Soc'y of Separationists, Inc. v. Herman*, 939 F.2d 1207, 1211 (5th Cir. 1991) ("[O]ne panel may not overrule the decision, right or wrong, of a prior panel in the absence of [a change in statutory law or] an intervening contrary or superseding decision by the court en banc or the Supreme Court.").

It is undoubtedly unfair to allow a decision to stand when it was our court that made a clear or obvious error, such as overlooking precedent. *See,*

No. 16-20081

*e.g.*, *United States v. Emeary*, 794 F.3d 526, 528 (5th Cir. 2015) (Dennis, J., in chambers) (recalling mandate when defendant's "appointed attorney and this court both committed plain error in reviewing [defendant's] sentence"); *United States v. Fraga-Araigo*, 2001 WL 1692406, at *2 (5th Cir. 20 Nov. 2001). Far less unfair is when, as here, our panel did exactly what it was supposed to do: apply the rule of orderliness to affirm Davila's sentence based on established precedent. *Soc'y of Separationists, Inc.*, 939 F.2d at 1211. That other cases have not made a distinction between decisions that were correct when decided and those that were wrong when decided should not distract from this court's weighing all relevant factors before employing this "extraordinary", and, importantly, *discretionary*, remedy of recalling the mandate. *Thompson*, 523 U.S. at 549–50.

## C.

Toward that end, the facts and circumstances surrounding Davila's sentencing are significant. He pleaded guilty to burglary of a habitation, a very serious crime; but, after *Herrold*, his burglary for the advisory Guidelines base-offense enhancement purposes essentially does not "count[]". *Herrold*, 883 F.3d at 542 (Haynes, J., dissenting). Again, as the dissent in *Herrold* notes: "The effect of the majority opinion . . . is to render all burglary convictions in the second-most populous state in the country nullities as far as the [Armed Career Criminal Act] is concerned". *Id.* To go one step further, as stated correctly by the majority's order at 2, *Herrold* effectively nullified burglary convictions for purposes of Guideline 2L1.2(b)(1)(A)(ii) (2015) (then applying 16-level enhancement for "crime of violence"). *Id.* at 529 (overruling *Uribe*, 838 F.3d at 670–71).

Although the categorical approach for application of a Guideline at sentencing does not permit considering the facts of defendants' case, *Mathis v. United States*, 136 S. Ct. 2243, 2248 (2016), the facts of Davila's burglary

18

conviction must be considered when determining whether it is "unjust" that his sentencing decision remain final. *See United States v. Matias-Sanchez*, 716 F. App'x 306, 308 (5th Cir. 2018) (Under the fourth prong of plain-error review—whether the error "seriously affects the fairness, integrity, or public reputation of judicial proceedings"—"we take a holistic approach . . . analyzing the individual facts of the case and whether failure to grant relief would result in a 'miscarriage of justice'".). The facts of Davila's burglary conviction are consistent with Texas Penal Code § 30.02(a)(1), the section of the statute that qualified, pre-*Herrold*, as generic burglary. *Conde-Castaneda*, 753 F.3d at 176.

Witnesses at the scene of the burglary saw Davila and two others exiting a shattered window in a neighbor's house, carrying stolen electronics equipment; and the police apprehended Davila with the stolen goods. The victim did not know Davila, indicating he had felonious intent when he unlawfully entered the victim's home. *See Herrold*, 883 F.3d at 531. Accordingly, Davila was convicted for activity that would have justified the crime-of-violence enhancement, but for the structure of the Texas statute.

D.

Finally, the interests of finality and the nature of our sentencing system counsel our extreme caution in disturbing the finality of a criminal defendant's sentence. The interests of finality are absolutely "paramount" in the criminal-justice system. *Thompson*, 523 U.S. at 557. The Supreme Court's directive on this point bears repeating: "Finality is essential to both the retributive and the deterrent functions of criminal law. Neither innocence nor just punishment can be vindicated until the final judgment is known. Without finality, the criminal law is deprived of much of its deterrent effect." *Id.* at 555 (internal quotations omitted). These considerations, among others, propel the criminal law's general rule that new rules of constitutional law are not applied retroactively to cases on collateral review. *Teague*, 489 U.S. at 307; *Williams*

*v. Taylor*, 529 U.S. 420, 436 (2000) ("AEDPA's purpose [is] to further the principles of comity, finality, and federalism.").

A liberal application of our inherent, *but discretionary*, power to recall the mandate would disrupt our current sentencing system should the case be remanded for resentencing. (Here, the majority also grants leave to file an out-of-time petition for panel rehearing; the petition seeks remand for resentencing.)

Under that system, the Guidelines are not "mandatory and binding on all judges"; the Guidelines are only advisory. *United States v. Booker*, 543 U.S. 220, 233, 260–62 (2005). "[T]he Guidelines [are] the starting point", but they "are not the only consideration": "after giving [the] parties an opportunity to argue for whatever sentence they deem appropriate, the district judge should then consider all of the [18 U.S.C.] § 3553(a) [sentencing] factors to determine whether they support the sentence requested by a party". *Gall v. United States*, 552 U.S. 38, 49–50 (2007). This system requires district courts to expend substantial time and judicial resources in sentencing.

To recall the mandate in this case—not to mention all cases with "similarly situated defendants", consistent with the majority's expansive application of our discretionary standard—sets in motion our possibly remanding for resentencing. Should remand be ordered, the probation office and district court must expend significant resources in re-investigating and re-calculating Davila's, and perhaps others', sentences.

Along that line, the probation officer will probably have to prepare a supplemental presentence-investigation report (PSR), after a thorough re-investigation of Davila's circumstances. Fed. R. Crim. P. 32(c)(1). The court must then recalculate Davila's advisory Guidelines-sentencing range, using an outdated (2015) version of the Guidelines. This task could prove difficult with Guideline 2L1.2 because a defendant's prior conviction might, or might not,

count as an "aggravated felony", or otherwise fit many of the other sentencing enhancements.  U.S.S.G. § 2L1.2(b)(1)(B) (2015).

But resentencing would not end with calculating the proper, advisory sentencing range:  The court will have to expend further resources in resentencing Davila.  It cannot merely calculate his sentence without the 16-level enhancement.  It will have to "(1) [re]calculate[] the advisory sentencing range; (2) [re]consider[] the specific offender characteristics and grounds for departure enumerated in the Guidelines; and (3) [re]weigh[] the applicable factors in 18 U.S.C. § 3553(a) as a whole".  *United States v. Jacobs*, 635 F.3d 778, 782 (5th Cir. 2011).  This would deplete the distict court's precious judicial resources, especially because of the possible large number of defendants in Davila's circumstances.  *Herrold*, 883 F.3d at 542 (Haynes, J., dissenting) ("In just a single year, Texans reported 152,444 burglaries.").

That the Guidelines are discretionary is important in the light of the factual circumstances surrounding Davila's criminal history and sentencing, which also weigh against our granting him recall-relief.  The Guidelines being advisory, the court could find the 18 U.S.C. § 3553(a) sentencing factors warrant a variance outside the advisory Guidelines-sentencing range. *Jacobs*, 635 F.3d at 782.

Not only did Davila plead guilty to burglary of a habitation and illegal reentry, he also pleaded guilty to three separate instances of assault, all in the year 2012, the same year he committed burglary.  These crimes are significant because, following his burglary conviction in December 2012, he was incarcerated in a Texas-state prison for one year (even though he was sentenced to three years' imprisonment), and deported in December 2013.  He had been released only for 14 months before he was arrested for illegally reentering the United States in March 2015, a crime to which he pleaded guilty.

21

No. 16-20081

Despite Davila's prior crimes, he was sentenced to ten months below the minimum for his advisory Guidelines-sentencing range: He was sentenced to 47 months' imprisonment, even though his advisory range was 57 to 71 months. Although *Herrold* bars the resentencing court from applying the 16-level enhancement, Davila's being convicted of a serious felony could be considered under the 18 U.S.C. § 3553(a) sentencing factors. Arguably, the same sentence of 47 months' imprisonment is not unreasonable in the light of Davila's extensive criminal history, need to protect the public, and need to deter other criminal conduct. 18 U.S.C. § 3553(a).

Along that line, the resentencing court may consider a departure because Davila had at least one arrest that did not count towards his criminal-history calculation. U.S.S.G. § 4A1.3(a)(1) (permitting departure "[i]f reliable information indicates that the defendant's criminal history category substantially under-represents the seriousness of the defendant's criminal history or the likelihood that the defendant will commit other crimes"). His PSR states his "criminal history may be under-represented, because [he] has a prior arrest for manufacturing/delivery of a controlled substance on August 27, 2012, which was dismissed because [he] was convicted on burglary of a habitation . . . instead". In reweighing the 18 U.S.C. § 3553(a) sentencing factors in the light of Davila's criminal history and his burglary offense's not "count[ing]" for sentencing-enhancement purposes, the court might consider an upward departure or variance. *Herrold*, 883 F.3d at 542 (Haynes, J., dissenting).

On remand, Davila's new advisory Guidelines-sentencing range, with a possible 8-level increase for "aggravated felony", would be 24 to 30 months' imprisonment, 17 months less than his current 47-month sentence. But, as discussed *supra*, that advisory calculation is not the end of the analysis. And, most importantly, Davila's case may be but one of many. *See id*. Simply put,

No. 16-20081

our criminal justice system was not designed to incorporate wide-spread resentencing in response to every change in governing law.

### III.

For the foregoing reasons, I respectfully DISSENT from granting the motion to recall the mandate and the two related motions.